[No. H005434. Sixth Dist. Dec. 20, 1990.]

THE PEOPLE, Plaintiff and Appellant, v.
GREGORY GOODNER, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and Morris Beatus, Deputy Attorneys General, for Plaintiff and Appellant.

Swenor & Crooks and Rita L. Swenor for Defendant and Appellant.

**OPINION**

**COTTLE, J.**—Defendant Gregory Goodner was charged by information with one count of robbery (Pen. Code, §§ 211-212.5, subd. (b)). The information alleged he had previously been convicted of four separate serious felonies involving burglary of an inhabited dwelling (Pen. Code, §§ 667, 1192.7) and had served three separate prior prison terms (Pen. Code, § 667.5, subd. (b)). Defendant moved to strike three of the four prior serious felony allegations; the court granted the motion to strike as to two of those three allegations while retaining use of one of the underlying convictions as a Penal Code section 667.5, subdivision (b) prison prior. Defendant then pleaded guilty to the robbery, admitted the two remaining unstricken serious felony allegations, and admitted one of the three prior prison term allegations. Defendant was sentenced to 16 years in state prison. The People appeal challenging the correctness of the trial court's legal determination striking from the information the allegations that two of defendant's prior felony convictions were "serious felonies" within the meaning of Penal Code section 667. In addition to responding to the People's appeal, defendant Goodner appeals contending the trial court erred in failing to strike the serious felony allegation he had unsuccessfully challenged below.

### FACTS

On March 21, 1988, defendant entered a branch of Bell Savings in San Jose. He approached a teller with a newspaper in his hand and stated this

was "a robbery" and that he did not want "a dye pack." The teller gave defendant the ones, fives, and tens in her drawer; the defendant put the money in his newspaper and ran. The teller later identified defendant from a photographic lineup.

## I

### THE PEOPLE'S APPEAL

■ "An order *striking* a prior is appealable under [Penal Code] section 1238, subdivision (a)(1) or (a)(6). [Citation.]" (*People* v. *Eberhardt* (1986) 186 Cal.App.3d 1112, 1123 [231 Cal.Rptr. 387].)[1] Our consideration of the People's appeal in no way implicates defendant's constitutional guaranty against double jeopardy. ■ " 'The Double Jeopardy Clause forbids a second *trial* for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials.' " (*Stone* v. *Superior* Court (1982) 31 Cal.3d 503, 515 [183 Cal.Rptr. 647, 646 P.2d 809], italics added.) This rule of constitutional law applies "in the context of a *trial* of a prior conviction when insufficient evidence is introduced to sustain the allegation." (*People* v. *Hockersmith* (1990) 217 Cal.App.3d 968, 972 [266 Cal.Rptr. 380], italics added.) ■ Here, however the People appeal the trial court's order granting defendant's pretrial motion to "strike" his priors as "non-serious felonies" (capitalization omitted); after the law and motion ruling in which the court granted defendant's motion to strike prior No. 69112 and denied defendant's motion to strike prior No. 76965, the court ordered the matter to "trail" in the same department "for settlement and/or set for trial." At the next court date, the court agreed to reconsider the pretrial motion to strike prior No. 76965 and granted the motion. The court then asked defense counsel to speak with defendant regarding possible settlement of the case prior to trial. Because both rulings on the motion to strike were made before jeopardy attached, they are not subject to the former jeopardy doctrine. (*Rhinehart* v. *Municipal Court* (1984) 35 Cal.3d 772, 779, fn. 8 [200 Cal.Rptr. 916, 677 P.2d 1206]; *People* v. *Jordan* (1978) 86 Cal.App.3d 529, 533 [150 Cal.Rptr. 334].) We therefore address the People's contentions on their merits.

At the time of defendant's convictions in Santa Clara County for prior Nos. 69112 and 76965 (hereinafter 69112 and 76965), second degree burgla-

---

[1] Penal Code section 1238 provides in pertinent part: "(a) An appeal may be taken by the people from any of the following: [¶] (1) An order setting aside the indictment, information, or complaint . . . . [¶] (6) An order modifying the verdict or finding by reducing the degree of the offense or the punishment imposed or modifying the offense to a lesser offense."

ry, to which he pleaded guilty in each case, included both residential daytime burglary and nonresidential burglaries.

At the hearing on defendant's motion to strike 69112, the only document before the court which described the second degree burglary conviction sufficiently to classify it as a serious felony under Penal Code sections 667 and 1192.7, subdivision (c)(18) ("burglary of an inhabited dwelling house . . . or inhabited portion of any other building") was the probation report filed in 69112. In raising a hearsay objection to the use of the probation report, Goodner claimed a violation of his right to confront and cross-examine witnesses. The court below determined that, as a matter of law, it could not consider the probation report to determine the residential nature of the prior burglary.

At the hearing on defendant's motion to strike 76965, the trial court factually determined that 76965 involved a residential burglary. The court found that the preliminary examination transcript made this fact "clear" and without question. However, the court felt compelled by *People* v. *Vasquez* ■ (Cal.App.), a case since depublished, to strike the prior because the record failed to show an express acknowledgement from defendant's own "lips in some fashion" that the burglarized structure was a residential dwelling.

On appeal the People contend the court erred in refusing to consider the probation report in 69112 and in refusing to rely upon the preliminary examination transcript in 76965. We agree.

■ In light of the Supreme Court's ruling in *People* v. *Guerrero* (1988) 44 Cal.3d 343, 355 [243 Cal.Rptr. 688, 748 P.2d 1150], a trial court may now look behind the bare judgment of conviction to determine, from the entire record, whether the conviction involved the burglary of an inhabited residence.[2] Since *Guerrero*, courts have found a variety of items from the file of a prior conviction proper for consideration.

---

[2] This holding in *Guerrero* explains why defendant's reliance upon *U. S.* v. *Potter* (9th Cir. 1990) 895 F.2d 1231 is misplaced. In that case, the trial court did not have any portion of the "entire record" regarding the prior conviction before it; instead it erroneously relied upon the presentence investigation report on the current charge which summarily "noted that [Potter] had been convicted of 'Rape by Force' in 1981." (*Id.*, at p. 1237.) Holding that the presentence investigation report on the instant charge was not sufficiently reliable information, the court concluded the court should have before it a copy of the judgment of conviction when determining the nature of a prior conviction. Signficantly, the court noted that it did "not foreclose the possibility that a defendant's conviction under a specific statutory section or subsection might be established by some other form of clearly reliable evidence." (*Id.*, at p. 1238.)

In *People* v. *Garcia* (1989) 216 Cal.App.3d 233 [264 Cal.Rptr. 662], the trial court considered portions of the probation's officer's report of a prior conviction to determine whether the prior fit within the provisions of Penal Code section 667. The Fourth District Court of Appeal rejected defendant's contention that "the probation officer's report was inadmissible hearsay and violated his right to confront witnesses" (*id.*, at p. 236), holding that the trial court "was entitled to review admissions of a defendant in the probation report of his prior conviction." (*Id.*, at p. 237.)

"The major policy underlying the hearsay rule is the need for cross-examination to test the credibility of the declarant or witness." (*People* v. *Castellanos* (1990) 219 Cal.App.3d 1163, 1173 [269 Cal.Rptr. 93].) Like the court in *Garcia*, "[w]e recognize a probation report often contains hearsay matter. Indeed section 1203 contemplates and allows hearsay information within probation reports. [Citation.] [However,] [i]f a defendant contends the hearsay information is unfair or untrue[,] he is given an opportunity to refute it. [Citation.]" (*People* v. *Garcia, supra*, 216 Cal.App.3d at p. 237.) The court in *Garcia* "did not see defendant's admission as a problem, since the defendant was afforded an ample opportunity, both at the prior proceeding and the sentencing hearing, to challenge or refute the statement attributed to him. [Citation.]" (*People* v. *Williams* (1990) 222 Cal.App.3d 911, 917 [272 Cal.Rptr. 212].)

Recently, in *People* v. *Williams, supra*, the First District Court of Appeal agreed with the court in *Garcia* that it is proper to use a defendant's statements contained in a probation report to determine the nature of a prior conviction under Evidence Code section 1220, the party admission exception to the hearsay rule. The court in *Williams* noted that many post-*Guerrero* cases "implicitly follow this exception to the hearsay rule in sanctioning a sentencing court's consideration of documents which reflect a defendant's explicit or implicit concession as to the nature of a prior conviction" (222 Cal.App.3d at p. 916), and that the defendant in *Garcia*, unlike the defendant in *Williams*, was "afforded adequate protection from the dangers of out-of-court statements." (*Id.* at p. 918.)

The court in *People* v. *Castellanos, supra*, 219 Cal.App.3d 1163, held that preliminary hearing testimony could be considered to determine the nature of a prior burglary conviction. The court reasoned that "[b]ecause the preliminary hearing transcript testimony and other relevant court documents, albeit hearsay, are not being offered against the defendant in the traditional sense, but are merely being offered for the neutral inquiry as to the nature of the earlier offense, i.e., to explain the defendant's conduct which comprised the crime he admitted to have suffered in the earlier proceeding, they are admissible as exceptions to the hearsay rule to explain

his admissions. [Citation.]" (*Id.*, at p. 1174.) Perhaps equally important, "[t]he main reasons for excluding hearsay evidence are: '(a) The statements are not made under *oath*; (b) the adverse party has *no opportunity to cross-examine* the person who made them; and (c) the jury cannot observe his *demeanor* while making them.' [Citations.]" (*People* v. *Williams, supra,* 222 Cal.App.3d at p. 916.) Given that statements made during a preliminary hearing are made under oath and are subject to cross-examination, we conclude defendant is afforded adequate protection from the dangers of out-of-court statements contained in the transcript of that proceeding.

Based on the holding in *Guerrero* and the reasoning in *Garcia, Williams,* and *Castellanos,* we conclude the trial court erred in excluding the defendant's statements contained in the probation report in 69112 and in refusing to rely upon the preliminary examination transcript in 76965. We are convinced that where the nature of the proceeding is "to determine whether a defendant has suffered a prior serious felony conviction (not to determine whether he is guilty of that earlier offense)" (*People* v. *Castellanos, supra,* 219 Cal.App.3d at p. 1174), the defendant's *statements contained in the* probation report[3] and the entire preliminary hearing transcript, albeit hearsay, are each admissible as an exception to the hearsay rule to explain his admissions.[4] They both contained evidence which should have been considered by the trial court to determine the nature of defendant's earlier burglaries.

Defendant claims the trial court should have stricken 69112 even if the record does establish the burglary conviction involved an inhabited dwelling. He argues that because he was committed to the California Youth Authority for the offense and was discharged from the Youth Authority, albeit dishonorably, the conviction was reduced to a misdemeanor by operation of law under Penal Code section 17, subdivision (c).[5]

■ We agree with the court in *People* v. *Lassiter* (1988) 202 Cal.App.3d 352, 355-356 [248 Cal.Rptr. 320]) that a dishonorable discharge from the

---

[3] Like the court in *Williams,* we "decline to address whether other material in the probation report may be used to determine if the prior conviction is a 'serious felony.' " (*People* v. *Garcia, supra,* 216 Cal.App.3d at p. 235.)

[4] The People may present the above-mentioned evidence to support a finding of the truth of a prior serious felony conviction; on the other hand, the defendant must be afforded an ample opportunity, to challenge or refute, any hearsay evidence presented against him. (See *People* v. *Garcia, supra,* 216 Cal.App.3d at p. 237; *People* v. *Barajas* (1972) 26 Cal.App.3d 932, 939 [103 Cal.Rptr. 405].)

[5] Penal Code section 17, subdivision (c) provides: "When a defendant is committed to the Youth Authority for a crime punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, the offense shall, upon the discharge of the defendant from the Youth Authority, thereafter be deemed a misdemeanor for all purposes."

Youth Authority does not reduce the commitment offense from a felony to a misdemeanor for the purposes of a serious felony conviction enhancement. We cannot give the statute its literal meaning "if doing so would result in absurd consequences which the Legislature did not intend." (*Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 673 [56 Cal.Rptr. 265, 423 P.2d 193].) Noting that "statutes in pari materia should be read together as constituting one law," and that the legislative policy reflected in Health and Safety Code sections 1179 and 1772 is " 'to provide incentives to youthful offenders to work towards honorable dismissal or honorable discharge' [citation]," the court in *Lassiter* correctly reasoned as follows: "To conclude that the Legislature intended to allow a defendant who had been *dishonorably* discharged from the CYA to benefit from that discharge would pervert the intent of a statute such as section 17, subdivision (c) which is grounded in rehabilitative principles . . . . Moreover, the purpose of section 667 is to deter habitual criminal activity and to provide retributive punishment of persons who repeatedly break the law by significantly enhancing their sentences for subsequent convictions. [Citations.]" (*People* v. *Lassiter, supra,* 202 Cal.App.3d. at pp. 355-356, fns. omitted; see also *People* v. *Jacob* (1985) 174 Cal.App.3d 1166, 1168 [220 Cal.Rptr. 520].)

Defendant's claim that the legislative history of the 1976 amendment to Penal Code section 17 which added subdivision (c) undermines the analysis in *Lassiter* is without merit. The amendment was in immediate response to the Supreme Court's ruling in *People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375], which held that juveniles sentenced to the Youth Authority as an alternative to a state prison sentence must be treated as if they were misdemeanants and released at the end of one year; there is nothing in the legislative history of the amendment which suggests an intentional retreat from the established legislative intent either to increase incentives for honorable discharge or to increase penalty for subsequent convictions.

Similarly, defendant's reliance on *People* v. *Hannon* (1971) 5 Cal.3d 330 [96 Cal.Rptr. 35, 486 P.2d 1235] is misplaced. In *Hannon* the Supreme Court rejected the People's statutory interpretation of Penal Code section 17, subdivision (b)(2) because the legislative history of the statute in question revealed that the People's interpretation flaunted the "clear legislative intent" of the statute by in effect reenacting a system the Legislature had repealed. (*Id.,* at p. 338.) No similar circumstance exists here. The Court in *Hannon* recognized that "a literal interpretation of a statute is not necessarily controlling and will be rejected if it leads to an absurdity." (*Id.,* at p. 335.) *Lassiter*'s rejection of a literal interpretation of subdivision (c) of Penal Code section 17 correctly avoids an absurd result and reflects the long-established legislative policy to encourage youthful offenders to work

toward honorable discharge from the Youth Authority. (See *People* v. *Navarro* (1972) 7 Cal.3d 248, 277 [102 Cal.Rptr. 137, 497 P.2d 481].)

■ ■ ■ ■ In light of the above, the court's order striking priors 69112 and 76965 must be reversed.[6]

## II

### DEFENDANT'S APPEAL

Defendant contends the trial court erred in failing to strike the prior serious felony allegation involving Alameda County Superior Court docket No. H-7593 (hereinafter H-7593). He challenges the court's finding that he knowingly and intelligently waived his constitutional rights in entering his guilty plea to a burglary of an inhabited dwelling in H-7593. The contention is without merit.

■ At the plea hearing on H-7593 on September 16, 1985, the following dialogue took place between the court and defendant: "THE COURT: At a trial in the Superior Court or this Court for that matter the District Attorney would be required to prove your guilt beyond a reasonable doubt. That would be a trial by Court or by jury; do you understand that? [¶] MR. GOODNER: Yes. [¶] THE COURT: Do you give up your right to trial by Court or by jury? [¶] MR. GOODNER: Yes. [¶] THE COURT: Do you give up your right to confront and cross-examine the witnesses against you at such a trial? [¶] MR. GOODNER: Yes. [¶] THE COURT: Do you give up your privilege against self-incrimination and alternative right to testify on your own behalf? [¶] MR. GOODNER: Yeah." The court then advised defendant that the felony plea counted as a prior conviction and "it will enhance the penalty to an additional five years State Prison, that's in addition to any other time you might be ordered to serve as a result of future felonies . . . ." When asked whether he understood that he was subject to an enhancement of an additional five-year sentence on future felony convictions, the defendant responded, "Yeah," and then pleaded guilty to burglarizing an inhabited dwelling.

---

[6]Prior to his plea of guilty to robbery and his admission, defendant was advised the prior serious felony convictions allegations based upon 69112 and 76965 would be reinstated should this court reverse the trial court's order and that "[i]f a fact-finding [*sic*] found those to be true . . . the Court would then be required to impose that additional ten-year term." Defendant's acknowledgement that he understood this possibility allows his plea to remain undisturbed. We note that, in the event the prior serious felony conviction allegation based upon 76965 is subsequently found true, the sentencing court could impose either a five-year term for that enhancement or the one-year term pursuant to Penal Code section 667.5, subdivision (b) based on the same underlying offense; the term not imposed would then be stricken. (See Pen. Code, § 654; *People* v. *Hopkins* (1985) 167 Cal.App.3d 110, 117-118 [212 Cal.Rptr. 888].)

The trial court in the present case held an evidentiary hearing on defendant's claim that his plea in H-7593 was not knowingly and intelligently entered. The court had before it the plea transcript of September 16, 1985. In addition, defendant testified that his declaration, in which he stated that his rights in H-7593 were not explained to him, was true "to the best of [his] knowledge." At the end of the hearing the trial court found that "the record adequately reflects that [Goodner] was advised of and understood the elements of the offense, was advised of his right to confront and cross-examine and self-incrimination, which conviction took place in 1985."

On appeal defendant claims the September 16, 1985, record "affirmatively fails to reflect that the purported waivers obtained at th[is] change of plea hearing . . . were 'understandingly and intelligently' waived by appellant." ■ However, the burden rests on the defendant to rebut the presumption of regularity accorded a judgment being collaterally attacked on constitutional grounds. (*People* v. *Sumstine* (1984) 36 Cal.3d 909, 922-923 [206 Cal.Rptr. 707, 687 P.2d 904].) To satisfy this burden, a defendant must prove actual denial of his constitutional rights. (*Id.*, at p. 923; *People* v. *Dolliver* (1986) 181 Cal.App.3d 49, 61 [225 Cal.Rptr. 920].)

In the present case, the plea hearing transcript in evidence shows that defendant knew and understood the rights he was waiving in H-7593 by entering a guilty plea. "Resolution of conflicting evidence is a factual issue to be resolved by the trial court in a hearing to determine the constitutional validity of prior convictions. [Citation.]" (*People* v. *Nugent* (1971) 18 Cal.App.3d 911, 915 [96 Cal.Rptr. 209].) ■ There is substantial evidence in the record to support the trial court's implied finding that defendant did not meet his burden. The trial court did not err by refusing to strike the serious felony prior conviction alleged in conjunction with H-7593.

## III

### DISPOSITION

The orders striking the prior serious felony conviction allegations involving priors Nos. 76965 and 69112 are reversed. The two allegations are reinstated and the cause is remanded to the trial court for further proceedings consistent with the views expressed in this opinion. Defendant is free to challenge the veracity of these two prior serious felony allegations by court

or jury trial should he so choose. In all other respects, the judgment is affirmed.

Agliano, P. J., and Bamattre-Manoukian, J., concurred.

The petition of appellant Goodner for review by the Supreme Court was denied March 13, 1991.