[No. H014775. Sixth Dist. Feb. 4, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
GUSTAVO MARC MONREAL, Defendant and Appellant.

672

**COUNSEL**

James R. Stupar, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Gregory A. Ott, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BAMATTRE-MANOUKIAN, J.**—Defendant Gustavo Marc Monreal was convicted by guilty plea of two counts of second degree burglary of the

vehicles of Sandra Del Toro and Alok Jhanji (counts 1 and 2; §§ 459-460).[1] Pursuant to the plea bargain, defendant acknowledged that the court could also consider for purposes of sentencing and restitution a charge of second degree burglary of the vehicle of Kenneth Walters (count 3; §§ 459-460) and a charge of receiving a stolen Panasonic car stereo (count 6; § 496). At sentencing the court dismissed counts 3 and 6 and the remaining three counts, including petty theft from the vehicle of Robert Wicke (count 4; §§ 484, 488) and two other charges of receiving stolen car stereo equipment (counts 5 and 7; § 496).

Defendant was also charged with the prior strike felony of assault with personal use of a deadly weapon. (§ 245, subd. (a)(1).) The parties submitted for court trial whether this prior felony qualified as serious. Defense counsel agreed to submit the issue on the abstract of judgment and the probation report, which he conceded were admissible. The parties agreed that if the trial court did not find a strike, the bargain would be renegotiated.[2] The trial court found that defendant had a prior strike.

Pursuant to the plea bargain, the trial court imposed a prison sentence of 32 months, double the lower term on count 1, with the same concurrent term on count 2. The term was doubled under the "Three Strikes" statute. (§ 1170.12, subd. (c)(1).) The court ordered defendant to pay $105 restitution to Walters (count 3).

On appeal defendant contends that his trial counsel was ineffective because he did not object to admission of the probation report to prove that defendant's prior felony conviction qualified as a strike. For the reasons stated below, we will affirm the judgment.

*The Current Offenses*

The following evidence was presented at the preliminary examination. On July 1, 1995, around 3:15 a.m., Sunnyvale public safety officers responded to a call and apprehended defendant after he was seen leaving an apartment complex on a bicycle with a duffel bag strapped to his back. The public safety officers found stereo equipment and accessories in the duffel bag taken from four vehicles in the apartment complex. Windows in three of the vehicles had been broken. The fourth vehicle had an open top.

---

[1]Unspecified section references are to the Penal Code.

[2]Defense counsel agreed, "if the court finds the prior not true that [*sic*] the plea is withdrawn." This undermines defendant's contention on appeal that his counsel believed a not true finding on the prior would affect only sentencing and not the plea.

*Evidence of the Prior Conviction*

The parties agree that the abstract of judgment from defendant's prior conviction shows that defendant was convicted after jury trial on December 14, 1993, of assault with a knife. (§ 245, subd. (a)(1).) It does not show that defendant personally used the knife.

Section 1170.12, subdivision (b), defines a prior conviction as "(1) Any offense defined in subdivision (c) of Section 667.5 as a violent felony or any offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state." A violation of section 245, subdivision (a), is not listed among either the violent felonies in section 667.5, subdivision (c), or the serious felonies in section 1192.7, subdivision (c). If defendant's prior conviction qualifies as a serious felony, it is under section 1192.7, subdivision (c)(23), which states: "any felony in which the defendant personally used a dangerous or deadly weapon." (*People v. Equarte* (1986) 42 Cal.3d 456, 465 [229 Cal.Rptr. 116, 722 P.2d 890]; *People v. Williams* (1990) 222 Cal.App.3d 911, 914-915 [272 Cal.Rptr. 212].)

Here the probation report from the prior proceeding establishes that defendant personally used a knife and committed a serious felony. Defendant told the probation officer that he took the knife from Alejandro Urzua after they began fighting and stabbed him once.

## 1. *Certificate of Probable Cause*

■ The Attorney General contends that a certificate of probable cause under section 1237.5 is a prerequisite for this appeal.

We disagree. A certificate would be required if defendant were attacking the plea bargain in this case. (Cf. *People v. Masten* (1982) 137 Cal.App.3d 579, 585 [187 Cal.Rptr. 515], disapproved on another ground by *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8 [250 Cal.Rptr. 635, 758 P.2d 1165]; cf. *People v. Cotton* (1991) 230 Cal.App.3d 1072, 1079 [284 Cal.Rptr. 757].) But he is not attacking the plea bargain. Instead, defendant is challenging his attorney's effectiveness in the postplea trial on the nature of defendant's prior felony conviction. (*People v. Garner* (1985) 165 Cal.App.3d 145, 150 [211 Cal.Rptr. 267], disapproved on another ground by *People v. Thomas* (1986) 41 Cal.3d 837, 844, fn. 7 [226 Cal.Rptr. 107, 718 P.2d 94]; cf. *People v. Casarez* (1981) 124 Cal.App.3d 641, 644 [177 Cal.Rptr. 451]; Cal. Rules of Court, rule 31(d)(1).) The plea bargain did not control the outcome of that proceeding.

## 2. *Defendant's Statement to the Probation Officer*

■ On appeal, defendant contends that his trial counsel should have objected to the probation report rather than stipulating to its admissibility.

Defendant contends that the probation report is inadmissible hearsay and also is not part of the "record of conviction" to which trial courts may look to determine the nature of a prior conviction. (*People* v. *Guerrero* (1988) 44 Cal.3d 343, 355 [243 Cal.Rptr. 688, 748 P.2d 1150].)

In *People* v. *Reed* (1996) 13 Cal.4th 217 [52 Cal.Rptr.2d 106, 914 P.2d 184], the California Supreme Court suggested two possible meanings for "record of conviction," either "the record on appeal . . . or more narrowly, . . . only . . . those record documents reliably reflecting the facts of the offense for which the defendant was convicted . . . ." (*Id.* at p. 223.) *Reed* determined that a preliminary hearing transcript qualified under either definition as part of the record of conviction. The reliability of the transcript was ensured by the procedural protections afforded a defendant by a preliminary examination. "Those protections include the right to confront and cross-examine witnesses and the requirement those witnesses testify under oath." (*Ibid.*)

*Reed* declined to resolve "[w]hether the probation officer's report also falls within the more narrow definition . . . ." (*People* v. *Reed*, *supra*, 13 Cal.4th at p. 230.) *Reed* did not question whether a probation report falls within the broader definition of "record of conviction." That it does appears indisputable. Probation reports are mandatory when a felony convict is eligible for probation (§ 1203, subd. (b)(1)) and discretionary in other cases (§ 1203, subd. (g); Cal. Rules of Court, rule 411(a), (b)). Whenever a probation report is prepared, it must be filed in the records of the trial court. (§§ 1203, subd. (b)(2)(D), 1203.10, 1203d.) It is part of the record on appeal. (Cal. Rules of Court, rule 33(a)(1)(*l*).) As in *Reed*, we will consider whether the probation report is admissible hearsay before reaching the question whether it qualifies under the narrower definition of "record of conviction."

*Reed* concluded that a probation report excerpt was inadmissible multiple hearsay as follows. (*People* v. *Reed*, *supra*, 13 Cal.4th at p. 230.) *Reed* explained: "Aside from the out-of-court nature of the probation officer's statement itself, the report excerpt includes the officer's assertions that certain events 'reportedly' occurred during the prior assault. Narration of 'reported' events is by definition based on the statements of others. Indeed, unless the probation officer was a percipient witness to the assault, all of the narration contained in the excerpt must have been drawn from other people's previous statements.

"The report fragment does not identify the declarant or declarants from whose statements the probation officer drew his factual summary. There is no evidence the excerpt was based on defendant's own admissions to the

officer, so as to fall within the hearsay exception for party admissions. (Evid. Code, § 1220; see *People* v. *Garcia* (1989) 216 Cal.App.3d 233, 237 [264 Cal.Rptr. 662] [defendant's admissions contained in probation report]; [citation].) Nor does any other exception to the hearsay rule appear applicable." (*People* v. *Reed, supra*, 13 Cal.4th at p. 230.)

In this case, unlike *Reed*, the probation report did contain admissions by defendant to the probation officer about the circumstances of the offense. Such a statement qualifies as admissible hearsay under Evidence Code section 1220.[3] This court so held in *People* v. *Goodner* (1990) 226 Cal.App.3d 609, 615-616 [276 Cal.Rptr. 542]. *Goodner* agreed with precedent holding "that it is proper to use a defendant's statements contained in a probation report to determine the nature of a prior conviction under Evidence Code section 1220, the party admission exception to the hearsay rule." (226 Cal.App.3d at p. 615.)

We recognize that *Reed* has subsequently questioned the reasoning of *Goodner*. But it did so on another ground. What *Reed* questioned was the recognition of "a nonstatutory exception to the hearsay rule, as articulated in *People* v. *Castellanos*" (1990) 219 Cal.App.3d 1163 [269 Cal.Rptr. 93] and repeated in *Goodner*. (*People* v. *Reed, supra*, 13 Cal.4th at p. 229.) The above quote from *Reed* appears to endorse applying the hearsay exception for party admissions in a probation report.

While the party admission exception clears one possible hearsay objection in this case, another remains. The trial court considered the written report and not the probation officer's testimony. At the trial on the prior conviction, the prosecutor could not have proffered live testimony under *People* v. *Guerrero, supra*, 44 Cal.3d 343, 355, which "precluded the prosecution from calling live witnesses to the criminal acts in the prior case. The People 'may not relitigate the facts behind the record.' (*People* v. *Johnson* (1992) 3 Cal.4th 1183, 1242 [14 Cal.Rptr.2d 702, 842 P.2d 1].)" (*People* v. *Reed, supra*, 13 Cal.4th at p. 226.)

*Reed* generally stated that no hearsay exception appeared applicable to a particular probation report excerpt. *Reed* did not specifically discuss Evidence Code section 1280, which states: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act,

---

[3]Evidence Code section 1220 states: "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity."

condition, or event if all of the following appl[y]: [¶] (a) The writing was made by and within the scope of duty of a public employee. [¶] (b) The writing was made at or near the time of the act, condition, or event. [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

*People* v. *Campos* (1995) 32 Cal.App.4th 304 [38 Cal.Rptr.2d 113] did consider whether a probation report qualified as admissible hearsay under Evidence Code section 1280. *Campos* pointed out that the probation report was neither a writing contemporaneous with the act recorded nor based on trustworthy sources. (32 Cal.App.4th at p. 309.) The same problems are evident with the probation report excerpt in *Reed*. *Campos* does not specify what part of the probation report it found to be inadmissible hearsay.

Probation reports contain a wide variety of information, including descriptions of the crime, the defendant, the defendant's past record, a victim's statement, and the probation officer's recommendation regarding probation eligibility and possible sentence. (§§ 1203, subds. (b)(1), (2), (g), (h), 1203.10, 1203c.)[4] Some parts of a probation report, such as the summary of the crime, are obviously not a contemporaneous recording of an event. As *Reed* pointed out, the probation officer is not usually a witness to the crime.

---

[4]California Rules of Court, rule 411.5 states: "(a) A probation officer's presentence investigation report in a felony case shall include at least the following:

"(1) A face sheet showing at least: (i) the defendant's name and other identifying data; (ii) the case number; (iii) the crime of which the defendant was convicted; (iv) the date of commission of the crime, the date of conviction, and any other dates relevant to sentencing; (v) the defendant's custody status; and (vi) the terms of any agreement upon which a plea of guilty was based.

"(2) The facts and circumstances of the crime and the defendant's arrest, including information concerning any co-defendants and the status or disposition of their cases. The source of all such information shall be stated.

"(3) A summary of the defendant's record of prior criminal conduct, including convictions as an adult and sustained petitions in juvenile delinquency proceedings. Records of an arrest or charge not leading to a conviction or the sustaining of a petition shall not be included unless supported by facts concerning the arrest or charge.

"(4) Any statement made by the defendant to the probation officer, or a summary thereof, including the defendant's account of the circumstances of the crime.

"(5) Information concerning the victim of the crime, including: (i) the victim's statement or a summary thereof, if available; (ii) the amount of the victim's loss, and whether or not it is covered by insurance; and (iii) any information required by law.

"(6) Any relevant facts concerning the defendant's social history, including but not limited to those categories enumerated in Penal Code section 1203.10, organized under appropriate subheadings including, whenever applicable, 'Family, 'Education,' 'Employment and income,' 'Military,' 'Medical/psychological,' 'Record of substance abuse or lack thereof,' and any other relevant subheadings.

"(7) Collateral information, including written statements from: (i) official sources such as defense and prosecuting attorneys, police (subsequent to any police reports used to summarize the crime), probation and parole officers who have had prior experience with the defendant, and correctional personnel who observed the defendant's behavior during any period of

Our focus here is a narrow one, however. What we are concerned with is not the probation officer's summary of the crime, but the officer's summary of defendant's statement to her. As to this party admission, the probation officer appears to have recorded defendant's statement "at or near the time" defendant made the statement. Thus, it satisfies Evidence Code section 1280, subdivision (b). The probation officer is a public employee under Evidence Code section 1280, subdivision (a). (§ 1203.5; *People* ex rel. *Deputy Sheriffs' Assn.* v. *County of Santa Clara* (1996) 49 Cal.App.4th 1471, 1480 [57 Cal.Rptr.2d 322].)

The remaining question is whether this part of the probation report qualifies under Evidence Code section 1280, subdivision (c): "The sources of information and method and time of preparation were such as to indicate its trustworthiness." The source of information here was defendant himself. His statements were apparently promptly recorded in the probation officer's paraphrase. Nothing about the preparation of this part of the probation report suggests untrustworthiness.

Further ensuring the trustworthiness of this report was defendant's opportunity at the original sentencing hearing to present rebuttal evidence and

---

presentence incarceration; and (ii) interested persons, including family members and others who have written letters concerning the defendant.

"(8) An evaluation of factors relating to disposition. This section shall include: (i) a reasoned discussion of the defendant's suitability and eligibility for probation, and if probation is recommended, a proposed plan including recommendation for the conditions of probation and any special need for supervision; (ii) if a prison sentence is recommended or is likely to be imposed, a reasoned discussion of aggravating and mitigating factors affecting the sentence length; and (iii) a discussion of the defendant's ability to make restitution, pay any fine or penalty which may be recommended, or satisfy any special conditions of probation which are proposed. Discussions of factors affecting suitability for probation and affecting the sentence length shall refer to any sentencing rule directly relevant to the facts of the case, but no rule shall be cited without a reasoned discussion of its relevance and relative importance.

"(9) The probation officer's recommendation. When requested by the sentencing judge or by standing instructions to the probation department, the report shall include recommendations concerning the length of any prison term that may be imposed, including the base term, the imposition of concurrent or consecutive sentences, and the imposition or striking of the additional terms for enhancements charged and found.

"(10) Detailed information on presentence time spent by the defendant in custody; including the beginning and ending dates of the period(s) of custody, the existence of any other sentences imposed on the defendant during the period of custody; the amount of good behavior, work, or participation credit to which the defendant is entitled; and whether the sheriff or other officer holding custody, the prosecution, or the defense wishes a hearing be held for the purposes of denying good behavior, work, or participation credit.

"(11) A statement of mandatory and recommended restitution, restitution fines, other fines, and costs to be assessed against the defendant, including chargeable probation services and attorney fees under section 987.8 when appropriate, findings concerning the defendant's ability to pay, and a recommendation whether any restitution order shall become a judgment under section 1203(j) if unpaid."

challenge any statements in the probation report. (*People* v. *Garcia* (1989) 216 Cal.App.3d 233, 237 [264 Cal.Rptr. 662]; *People* v. *Goodner, supra*, 226 Cal.App.3d 609, 615; *People* v. *Bloom* (1983) 142 Cal.App.3d 310, 320 [190 Cal.Rptr. 857].) We recognize that defendant had no right to cross-examine the probation officer at the sentencing hearing. "[A]lthough a defendant is not precluded from presenting any affirmative evidence of his [or her] own, neither the Sixth Amendment nor the Penal Code requires that he [or she] be permitted to cross-examine the person who, pursuant to statutory mandate, prepares a probation report." (*People* v. *Smith* (1985) 38 Cal.3d 945, 960-961 [216 Cal.Rptr. 98, 702 P.2d 180]; *People* v. *Shaw* (1989) 210 Cal.App.3d 859, 869 [258 Cal.Rptr. 693].) But defendant had the opportunity to present evidence that he was misquoted by the probation officer. In view of defendant's opportunity to correct any errors in the probation report, we conclude that the probation officer's written report of defendant's admissions to her qualifies under Evidence Code section 1280.

Now we return to the question whether the probation officer's report of defendant's admissions to her qualifies under what *Reed* called the "more narrowly" defined use of the "record of conviction," which is limited to "those record documents reliably reflecting the facts of the offense for which the defendant was convicted." (*People* v. *Reed, supra*, 13 Cal.4th at p. 223.) Thus, we must resolve whether the probation officer's report of defendant's admissions regarding the facts of his offense is a *reliable* reflection of those facts.

We acknowledge that the procedural protections which support the reliability of a preliminary hearing transcript are not applicable to a probation officer's report of a defendant's admissions. Defendants are not ordinarily under oath when they speak with a probation officer. A probation officer's report is not made under penalty of perjury. It does not ordinarily purport to be a verbatim transcript of the defendant's statements.

Nevertheless, we conclude that the probation officer's report of defendant's admissions about his offense is reliable for the same reasons supporting our conclusion that the report is sufficiently trustworthy to qualify as an official record. Trustworthiness and reliability are analogous in this context. While a probation report, as here, may not be written under penalty of perjury, a probation report which makes a timely record of a defendant's statements to the probation officer bears strong earmarks of reliability. Such a report usually is prepared during a short period of time between conviction and sentencing, thus ensuring that the probation officer has recorded the statements shortly after they were made. The probation report's purpose is to provide the sentencing court with accurate information regarding the defendant and the offense. Given this purpose, there is little reason to doubt the

accuracy of the probation officer's report of defendant's admissions regarding the facts of his offense. The reliability of the report is further ensured by the fact that defendant had the opportunity to challenge the accuracy of the report at sentencing and to correct any misstatements. This fact obviates any need for a word-for-word transcription of a defendant's statement.

As these facts strongly support the reliability of the probation officer's report of defendant's admissions regarding the facts of his offense, we conclude that this part of the report qualifies as reliable within the "more narrowly" defined meaning of "record of conviction."

Since the probation report of defendant's admissions to the probation officer qualifies both as part of the record of conviction and as admissible hearsay, defense counsel was not ineffective in stipulating to its admissibility.

The conclusion that we reach here is that this part of the probation report is admissible, not that it is conclusive. While the prosecution is disabled from presenting live testimony in proof of a prior conviction, the California Supreme Court has indicated that a defendant may not be subject to the same constraint in disputing the prosecution's proof. (*People* v. *Guerrero*, *supra*, 44 Cal.3d 343, 356, fn. 1.) Regarding a preliminary examination transcript, *People* v. *Reed* cautiously observed: "Defendant . . . did not seek . . . to have the witnesses produced or to cross-examine them anew; . . . We express no opinion as to whether a defendant would be entitled to call live witnesses to dispute circumstances of the prior offense . . . ." (*People* v. *Reed*, *supra*, 13 Cal.4th at p. 229.)

Defendant here indicated at oral argument that, at trial of the prior, he could have testified himself and called the probation officer to testify regarding the accuracy of the written report. In fact, defendant proffered neither type of testimony at the trial of the prior. As in *Reed*, we also express no opinion about the defendant's right to present live testimony to dispute proof of a prior conviction.

3. *Right Against Self-incrimination*

■ Defendant also contends that use of his admissions to the probation officer violates his right against self-incrimination.

The Fifth Amendment to the United States Constitution establishes that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." Article I, section 15, of the California Constitution

states: "Persons may not . . . be compelled in a criminal cause to be a witness against themselves . . . ."

In *People* v. *Goodner* (1992) 7 Cal.App.4th 1324 [9 Cal.Rptr.2d 543], this court concluded that a convicted criminal is not ordinarily compelled in any way to make a statement to the probation officer after conviction and before sentencing. Accordingly, any statement that the defendant elects to make does not violate the Fifth Amendment. (*Id.* at pp. 1330-1332.)

*Goodner* explained (7 Cal.App.4th at p. 1330): "The federal Constitution does not necessarily require exclusion of defendant's prior admission to a probation officer. (*Minnesota* v. *Murphy* (1984) 465 U.S. 420, 440 [79 L.Ed.2d 409, 427-428, 104 S.Ct. 1136].) In *Murphy*, the defendant sought suppression of his interview statements to his probation officer, with whom he was required to meet as a condition of probation. The court held that statements concerning an earlier unrelated crime were admissible in a subsequent prosecution, notwithstanding the failure to advise defendant of his privilege against self-incrimination. (*Id.*, at pp. 429-430 [79 L.Ed.2d at pp. 420-421].) Finding that the defendant's failure to assert his self-incrimination privilege was not excused by a court order that he respond truthfully or by the probation officer's threats of revocation if the defendant lied (*id.*, at pp. 431-435 [79 L.Ed.2d at pp. 421-425]), the court concluded 'that since Murphy revealed incriminating information instead of timely asserting his Fifth Amendment privilege, his disclosures were not compelled incriminations. Because he had not been compelled to incriminate himself, Murphy could not successfully invoke the privilege to prevent the information he volunteered to his probation officer from being used against him in a criminal prosecution.' (*Id.*, at p. 440 [79 L.Ed.2d at p. 428].) Defendant Goodner's contention to the contrary, we do not find the fact Murphy was involved in a postsentencing interview on a matter unrelated to that for which he was on probation while Goodner was interviewed in a presentencing posture significant. It was significant that Murphy's statements were found voluntary despite the court order that he respond truthfully and despite his probation officer's threats of revocation while, in Goodner's case, there is no indication that he made the admissions in response to coercion or with the express hope of obtaining a favorable report."

Defendant asserts that *Goodner* "did not give full recognition to the holdings of *Murphy* and *Wheeler* or a litany of authority at the federal level." He invites this court to reassess its position in *Goodner*. We decline to reconsider the *Goodner* decision.

Defendant also points out that he was in custody when he talked to the probation officer. We do not believe this fact dictates a different conclusion

than *Goodner* reached. Admonitions pursuant to *Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974] are not required as part of a routine, postconviction, presentence interview, even though the interviewee is in custody. (*People* v. *Santana* (1982) 134 Cal.App.3d 773, 786-787 [184 Cal.Rptr. 733]; *Baumann* v. *United States* (9th Cir. 1982) 692 F.2d 565, 576-577; *U.S.* v. *Rogers* (10th Cir. 1990) 921 F.2d 975, 979; *U.S.* v. *Cortes* (2d Cir. 1990) 922 F.2d 123, 127; *Williams* v. *Chrans* (7th Cir. 1991) 945 F.2d 926, 951.) A defendant is usually advised by counsel before such an interview and is aware of the privilege against self-incrimination. (*U.S.* v. *Cortes, supra,* 922 F.2d 123.) There is no evidence here that the interview was an interrogation or that defendant's admissions were not voluntary. (Compare *U.S.* v. *Rogers, supra,* 921 F.2d at pp. 980-981, with *Jones* v. *Cardwell* (9th Cir. 1982) 686 F.2d 754, 756-757.)

Since a self-incrimination objection would have been unavailing, we conclude that defense counsel was not ineffective in failing to make this objection to the admission of the probation report.

## Disposition

The judgment is affirmed.

Cottle, P. J., and Mihara, J., concurred.

Petitions for a rehearing were denied February 27, 1997, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied May 14, 1997. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.