18 Cal.Rptr.3d 896 (2004)
122 Cal.App.4th 970
The PEOPLE, Plaintiff and Respondent,
v.
Mark Nicholas VERA, Defendant and Appellant.
No. H026350.
Court of Appeal, Sixth District.
September 29, 2004.
Review Denied December 15, 2004.
*898 Jill D. Lansing, Los Angeles, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant, Gerald A. Engler, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, Catherine A. McBrien, Deputy Attorney General, for Defendant and Appellant.
*897 WALSH, J.[*]
After entering a no contest plea to felony battery involving personal infliction of great bodily injury, defendant Mark Nicholas Vera expressed dissatisfaction with the performance of his public defender. In an initial hearing, the trial court heard defendant state several complaints, but ultimately ran out of time because a jury was arriving on another case. Based on defendant's stated complaints, the court denied defendant's request for substitute counsel without prejudice, but the court invited defendant to renew his motion at the next hearing. Defendant did not renew his motion. We will affirm the judgment after concluding, among other things, that defendant's failure to renew his motion bars the contention that he was denied a complete hearing.

THE OFFENSE
On December 16, 2000, 68-year-old Vincent Breon was assisting at a gas station in Cupertino. Defendant entered the convenience store part of the gas station, grabbed a handful of candy, and offered 15 cents. He seemed to be under the influence of something. Breon told him the candy was worth more and he took candy back from defendant. Defendant left the store. Defendant returned about 10 minutes later, grabbed a handful of candy bars, and put them in his pocket. When Breon told defendant to put them back and leave, defendant complied.
Later, when Breon went out to his car, defendant rushed at him from behind a dumpster and punched him in the left temple, knocking off his glasses. Breon fell to the ground and defendant kicked him several times in the neck and shoulder. Breon lost consciousness. When Breon came to, defendant was gone. Breon's left wrist was bruised, his left eye was swollen, and his vision was blurry. Breon discovered the day after the attack that $120 in cash was missing from his pants pocket.
Within an hour of the incident, Santa Clara County Deputy Sheriff Jason Brown took defendant into custody after finding him sleeping in some bushes about two blocks from the gas station. Defendant appeared to be intoxicated by alcohol. He resisted arrest and struggled to get out of the patrol car. A booking inventory revealed no money in his possession.

CHARGES AND PLEA
Following a preliminary examination on June 13, 2001, at which Breon and Deputy Brown testified, defendant was held to answer on the charges reflected in the information filed on June 22, 2001. The information charged defendant with assaulting Breon with force likely to produce great bodily injury (count 2  Pen.Code, § 245, subd. (a)(1)),[1] with abusing an elder adult *899 under circumstances likely to produce great bodily harm (count 3  § 368, subd. (b)(1)), and with personally inflicting serious bodily injury by battery (count 1  §§ 242-243, 12022.7, subd. (a)). The information also alleged that defendant had two prior serious felony convictions, one for armed assault and the other for first degree burglary, that were brought and tried separately.
On December 5, 2001, the following negotiated plea was announced. Defendant would plead no contest to battery and would admit inflicting great bodily injury and having two "strike" priors. The People agreed to request dismissal of the remaining counts at sentencing. Defendant would ask the court to dismiss the strike priors under People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628 (Romero). If the court denied the Romero motion, the People would request dismissal of the "Prop. 8 priors" (five-year enhancements for serious felony convictions under § 667, subd. (a)). If the court granted the Romero motion, the Proposition 8 priors would remain in place.
Defendant was advised of the rights waived by such a plea. He was advised that he was facing a potential sentence under the "Three Strikes" statutes of 25 years to life and 10 more years if the serious felony allegations were not stricken. After receiving this advice, defendant entered a no contest plea to felony battery and also admitted that he personally inflicted great bodily injury during the battery. Defendant also admitted that he has two prior serious felony convictions, one for armed assault and the other for first degree burglary.
The next hearing was set for January 2, 2002. That hearing was continued three times until April 10, 2002.

MARSDEN HEARING
On April 10, 2002, defendant appeared with his attorney from the Office of the Public Defender. In the absence of the prosecutor, counsel informed the court that defendant would like to make a People v. Marsden (1970) 2 Cal.3d 118, 84 Cal. Rptr. 156, 465 P.2d 44 (Marsden) motion.
The court asked defendant why he was dissatisfied with his attorney. Defendant said, "I have several issues. Please forgive me. I'm a little bit nervous." He stated that he had written a few things down.
Defendant's first concern was that one of his prior strikes was actually a 1990 or 1991 second degree burglary that was changed to first degree "for the sake of a deal." Defendant claimed that his counsel did not investigate this and told him there was nothing she could do about it. The court pointed out that counsel was going to be asking the court to strike the strike under Romero. The court stated, "I'll put the matter over then for "
Defendant stated, "Well, Your Honor, I'm still not finished, sir." The court responded, "Go ahead."
Defendant questioned counsel's investigation into the victim's injuries, saying that the victim's abrasion may have resulted from the fall and not defendant's blow. The court said, "Go on."
Defendant questioned the victim's testimony that he was robbed, saying that defendant was found with no money on him. Defense counsel had refused to subpoena the victim's bank records to see if *900 he had gone to the bank the day of the attack as he had testified.
Defendant questioned whether the victim had permanent vision loss. "I never ran up and hit him." Defendant had not seen a doctor's report confirming the vision loss or evidence of damage to the victim's glasses. The court pointed out that defendant was talking about the evidence in the case, and asked, "Beyond that, what else do you have?"
Defendant said that his attorney breached a promise to talk to him in jail before he was interviewed by the probation officer. There were errors in the probation report, including a statement that defendant was not remorseful. The court established that defendant had told his attorney about the errors and stated, "Go on."
Defendant apologized for going back to evidence gathering. Defendant asserted that his attorney had failed to speak with defendant's sister about his mental condition at the time of the attack.
The court stated that he wanted to give defense counsel "an opportunity to do what you have suggested here, looking into matters of evidence that might have been overlooked, making a Romero Motion and matters of that sort," possibly filing a motion to withdraw his plea. Defendant should talk to counsel meanwhile. The court recalled that there was extensive voir dire before defendant entered his plea. "So I'm going at this moment to deny the Marsden Motion."
"THE DEFENDANT: I'm not finished with my information though, Your Honor.
"THE COURT: It doesn't matter. There's still things to be done by your counsel in this case. [¶] I'll deny your Marsden Motion at this time without prejudice, which means that it can be renewed. [¶] And you heard your client, Ms. Smith. [¶] We're under pressure of time at this moment because I have a jury coming in at 9:30 and it's already past that, and also another case."
Defense counsel stated for the record that she and other attorneys had investigated a mental defect defense and concluded that one did not exist. Defendant questioned this statement and asked if robbery was a specific intent crime. The court pointed out that robbery was not charged. Defendant responded that the charge had been dropped by the magistrate at the preliminary examination. The court stated that defendant's remaining charges were not specific intent crimes. "There is no basis for your Marsden Motion on that ground." The court continued the case until May 23, 2002, for a Romero motion and a motion to withdraw the plea.

ROMERO HEARING AND SENTENCING
A motion to strike defendant's two strikes was filed, asserting defendant's serious and recurring mental health problems. At the hearing on May 23, 2002, the terms of the plea were restated. Defense counsel submitted the motion without oral argument. The court denied the Romero motion and sentenced defendant, then 38 years old, to prison for life with a minimum term of 25 years pursuant to the Three Strikes statutes. (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2).). The court granted the prosecutor's motion to dismiss counts 2 and 3. The court also granted the prosecutor's motion to dismiss the two serious felony enhancements. (§ 667, subd. (a).) Though defendant was present at the hearing, there was neither a renewed Marsden motion nor a motion to withdraw the plea.

1. THE NEED FOR A CERTIFICATE OF PROBABLE CAUSE
The Attorney General contends that we should not reach the merits of *901 defendant's appeal because he did not obtain a certificate of probable cause under section 1237.5 after entering a plea of nolo contendere.
California Rules of Court, rule 30(b)(4)(B), provides that no certificate of probable cause is required to appeal after a plea of guilty or nolo contendere if the appeal is based on "grounds that arose after entry of the plea and do not affect the plea's validity."
In this case, as explained more fully below, defendant is challenging his sentence and the denial of a postplea Marsden motion. According to the plea, the trial court had several sentencing options, including striking one, two, or none of defendant's two prior felony convictions. If the court were to strike none, defendant would be subject to life in prison under the Three Strikes statutes with a minimum term of 25 years. (§§ 667, subd. (e)(2), 1170.12, (c)(2).) If the court were to strike one, defendant would be subject to term doubling under the Three Strikes statutes (§§ 667, subd. (e)(1); 1170.12, (c)(1)), plus 10 years of serious felony enhancements (§ 667, subd. (a)). If the court were to strike both, defendant would be subject to the 10 years of enhancements. Since defendant's plea agreement contemplated a range of possible sentences, no certificate of probable cause is required to challenge the trial court's postplea exercise of sentencing discretion. (People v. Buttram (2003) 30 Cal.4th 773, 777, 134 Cal.Rptr.2d 571, 69 P.3d 420.)
To the extent defendant is challenging the denial of his postplea Marsden motion, we further conclude that no certificate of probable cause is required. The threshold issue raised by the postplea Marsden motion was whether defendant needed a new, substitute attorney in order to obtain effective representation. In People v. Smith (1993) 6 Cal.4th 684, 25 Cal. Rptr.2d 122, 863 P.2d 192 (Smith), the California Supreme Court stated, "It is the very nature of a Marsden motion, at whatever stage it is made, that the trial court must determine whether counsel has been providing competent representation. Whenever the motion is made, the inquiry is forward-looking in the sense that counsel would be substituted in order to provide effective assistance in the future. But the decision must always be based on what has happened in the past. The further one is in the process, the more counsel has done in the past that can be challenged, but that is a difference of degree, not kind." (Id. at pp. 694-695, 25 Cal.Rptr.2d 122, 863 P.2d 192.) We regard the issue of whether defendant currently needed a new attorney as a postplea issue not essentially implicating the validity of the no contest plea. (Cf. People v. Osorio (1987) 194 Cal.App.3d 183, 187, 239 Cal.Rptr. 333 [no certificate required when the defendant alleged that trial counsel should have filed a motion to withdraw his plea]; People v. Monreal (1997) 52 Cal.App.4th 670, 674, 60 Cal.Rptr.2d 737 [no certificate required when the defendant alleged that trial counsel should have objected to hearsay relied on at sentencing].)
The Attorney General contends that Osorio, on which defendant relies, was incorrectly decided. "[T]he substance of his Marsden claim goes to the essence of the plea." "If this court grants [defendant's] request for a remand to conduct a postplea Marsden hearing, and the trial court determines that [defendant] should have been granted substitute counsel, then [defendant's] guilty plea would be vacated."
The Attorney General's premise is incorrect. A determination that defendant is entitled to substitute counsel has no necessary implication for his no contest plea, which plea stands until a motion to withdraw it is made and granted. We conclude *902 that defendant was not required to obtain a certificate of probable cause to challenge the trial court's denial of defendant's postplea Marsden motion, although some of defendant's complaints pertained to his trial counsel's pre-plea conduct.

2. DENIAL OF MARSDEN MOTION
On appeal defendant contends that the trial "court failed to appoint counsel to evaluate his claim of ineffective assistance of counsel, and to present any grounds he may have found, to support the motion to withdraw the plea."
A criminal defendant's appointed attorney should be the embodiment of the defendant's Sixth Amendment right to the effective assistance of counsel. (Cf. People v. Smith (2003) 30 Cal.4th 581, 606, 134 Cal.Rptr.2d 1, 68 P.3d 302.) Accordingly, a court must appoint substitute counsel if either the current appointed attorney is providing inadequate representation (Marsden, supra, 2 Cal.3d at p. 123, 84 Cal.Rptr. 156, 465 P.2d 44) or the attorney-client relationship has become embroiled in such an irreconcilable conflict that ineffective representation is likely to result. (People v. Fierro (1991) 1 Cal.4th 173, 204, 3 Cal.Rptr.2d 426, 821 P.2d 1302; see People v. Crandell (1988) 46 Cal.3d 833, 854, 251 Cal.Rptr. 227, 760 P.2d 423 criticized on another ground by People v. Crayton (2002) 28 Cal.4th 346, 364-365, 121 Cal.Rptr.2d 580, 48 P.3d 1136.)
"[W]hen the defendant in some manner moves to discharge his current counsel" (People v. Lucky (1988) 45 Cal.3d 259, 281, 247 Cal.Rptr. 1, 753 P.2d 1052, fn. omitted), as this court has stated, "the trial court must afford the defendant an opportunity to express the specific reasons why he believes he is not being adequately represented by his current counsel." (People v. Olivencia (1988) 204 Cal.App.3d 1391, 1400, 251 Cal.Rptr. 880.) After hearing from the defendant, a trial court is within its discretion in denying the motion unless the defendant establishes substantial impairment of his right to counsel. (Marsden, supra, 2 Cal.3d at p. 123, 84 Cal.Rptr. 156, 465 P.2d 44.) On appeal we review the denial for an abuse of discretion. (People v. Barnett (1998) 17 Cal.4th 1044, 1075, 74 Cal.Rptr.2d 121, 954 P.2d 384 (Barnett).)

a. Sufficiency of defendant's stated complaints
Defendant essentially contends that his Marsden showing was sufficient to require substitution of counsel. We note that most of defendant's complaints alleged counsel's failures to investigate his case: counsel did not talk to defendant's sister about defendant's mental condition; counsel did not subpoena the victim's bank records; counsel did not look into the evidence of the victim's injuries.
The trial court was not required to accept these assertions of inadequate investigation. Indeed, trial counsel stated that she had investigated and rejected a mental defect defense. (Smith, supra, 6 Cal.4th at p. 696, 25 Cal.Rptr.2d 122, 863 P.2d 192.) Defense counsel is not required to investigate all potential witnesses. (Barnett, supra, 17 Cal.4th at p. 1111, 74 Cal.Rptr.2d 121, 954 P.2d 384.) Having heard the victim testify about his injuries at the preliminary examination, counsel may have reasonably determined it would be unproductive to look for documentary corroboration. Since there was no robbery charge, counsel may have deemed it unimportant to establish whether the victim had withdrawn money from the bank. These kinds of disagreements about trial strategy do not require substitution of counsel. (Id. at p. 1086, 74 Cal.Rptr.2d 121, 954 P.2d 384; see People v. Crandell, *903 supra, 46 Cal.3d at pp. 859-860, 251 Cal. Rptr. 227, 760 P.2d 423.)
Regarding counsel's failure to meet with defendant before his probation interview, the frequency of meetings is not a reliable indicator of incompetence. (People v. Hart (1999) 20 Cal.4th 546, 605, 85 Cal.Rptr.2d 132, 976 P.2d 683.) If the probation report contained errors, counsel had the opportunity at sentencing "to present rebuttal evidence and challenge any statements in the probation report." (People v. Monreal, supra, 52 Cal.App.4th at pp. 678-679, 60 Cal.Rptr.2d 737.)
We conclude that defendant's stated complaints did not compel appointment of substitute counsel because there was no showing that defendant's right to counsel had been substantially impaired.

b. Adequacy of court's inquiry
Defendant further contends that the trial court failed "to elicit and evaluate each and every ground upon which [defendant's] Marsden motion rested."
A trial court errs under Marsden by not affording a criminal defendant the opportunity to state all his reasons for dissatisfaction with his appointed attorney. (People v. Lewis (1978) 20 Cal.3d 496, 498-499, 143 Cal.Rptr. 138, 573 P.2d 40; People v. Hidalgo (1978) 22 Cal.3d 826, 827, 150 Cal.Rptr. 788, 587 P.2d 230; People v. Ivans (1992) 2 Cal.App.4th 1654, 1666, 4 Cal.Rptr.2d 66 (Ivans).) On the other hand, a defendant is not entitled to keep repeating and renewing complaints that the court has already heard. (People v. Clark (1992) 3 Cal.4th 41, 104, 10 Cal. Rptr.2d 554, 833 P.2d 561.)
We find no authority determining whether a trial judge must elicit all of a defendant's complaints at a single hearing. In Ivans, the appellate court reversed and remanded for a new hearing after finding a Marsden error when the trial "court did not inquire into all of the reasons for Ivans's request, even though Ivans explicitly stated he had listed only some of his reasons." (Ivans, supra, 2 Cal.App.4th at p. 1666, 4 Cal.Rptr.2d 66.) Unlike this case, in Ivans it does not appear that the trial court offered the defendant a later chance to present the balance of his reasons.
In People v. Lloyd (1992) 4 Cal.App.4th 724, 6 Cal.Rptr.2d 105, the appellate court found the denial of a Marsden hearing harmless in the following circumstances. The trial court erred by failing to hold a pretrial Marsden hearing after receiving written complaints by the defendant about his attorney. (Lloyd, at p. 731, 6 Cal. Rptr.2d 105.) However, a month later the court did hear the defendant state different complaints about his attorney during trial. (Id. at pp. 731-732, 6 Cal.Rptr.2d 105.) The appellate court concluded, "the court's error in failing to consider Lloyd's first Marsden motion became harmless when Lloyd failed to reassert the reasons underlying the motion at the later hearing." (Id. at p. 732, 6 Cal.Rptr.2d 105.) People v. Leonard (2000) 78 Cal.App.4th 776, 787-788, 93 Cal.Rptr.2d 180 reached a similar conclusion, finding an initial denial of a Marsden hearing harmless when the defendant was afforded a later full Marsden hearing.
In People v. Washington (1994) 27 Cal. App.4th 940, 33 Cal.Rptr.2d 569 (Washington), the appellate court found that no Marsden hearing was ever conducted after the defendant told the court he wanted to dismiss his attorney. In that case, one judge deferred a postconviction Marsden hearing until the trial judge could hear it. The trial judge never addressed the Marsden request, apparently believing it had been reached. The Attorney General argued that the defense failure to renew the *904 Marsden request "should be taken as a waiver of any right to a Marsden hearing." (Washington, at p. 943, 33 Cal.Rptr.2d 569.) The appellate court declined to reach the waiver argument, concluding that the defendant was unable to show prejudice in the absence of either sentencing error or evidence that trial counsel was ineffective. (Id. at p. 944, 33 Cal.Rptr.2d 569.)
In none of these cases did the trial court offer the defendant the opportunity for a second Marsden hearing after conducting a partial inquiry. We conclude that, while a trial court is required by Marsden to inquire into all of a defendant's complaints about his appointed counsel, the inquiry need not occur at a single hearing. It is not practical to grant a long-winded defendant the right to thus monopolize a busy trial court's calendar. When a trial court runs out of time to continue hearing a defendant's complaints, the court may deny substitution of counsel based on the stated complaints so long as the defendant is afforded a later opportunity to articulate his yet-unstated complaints.
In this case, the trial court offered defendant the opportunity for a further hearing. Defendant's failure to take advantage of this offer can only be interpreted as an abandonment of his unstated complaints. (Cf. People v. Lovings (2004) 118 Cal.App.4th 1305, 1312, 13 Cal.Rptr.3d 710 [the defendant's conduct at change of plea hearing indicated that Marsden concerns were gone].) While we are aware of no precedent finding abandonment of a Marsden motion, it is established that a defendant's conduct may amount to abandonment of a request to represent himself under Faretta v. California (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. (People v. Kenner (1990) 223 Cal.App.3d 56, 60-62, 272 Cal.Rptr. 551; People v. Skaggs (1996) 44 Cal.App.4th 1, 7-8, 51 Cal.Rptr.2d 376.) If a defendant can abandon his request to substitute himself for counsel, a defendant can abandon his request to substitute another counsel. We conclude that defendant abandoned his unstated complaints about counsel by not accepting the court's invitation to present them at a later hearing.
Since we conclude that there was no error here, we need not determine whether the error was harmless beyond a reasonable doubt. (Marsden, supra, 2 Cal.3d at p. 126, 84 Cal.Rptr. 156, 465 P.2d 44; People v. Lewis, supra, 20 Cal.3d at p. 499, 143 Cal.Rptr. 138, 573 P.2d 40; Ivans, supra, 2 Cal.App.4th at pp. 1666-1667, 4 Cal.Rptr.2d 66; People v. Leonard, supra, 78 Cal.App.4th at p. 787, 93 Cal.Rptr.2d 180; contra, Washington, supra, 27 Cal. App.4th at p. 944, 33 Cal.Rptr.2d 569).

3. SENTENCING
On appeal, defendant contends that the trial court imposed an illegal sentence in that the trial court lacked the authority to strike two five-year enhancements for serious felony convictions under section 667, subdivision (a). Defendant asks for imposition of 10 years of enhancements. Of course defendant does not want a longer sentence. Defendant wants a sentence that fits within the presumed maximum agreed sentence of 25 years to life. Defendant reasons that if the 10 years of enhancements are imposed, the trial court will be required to strike at least one of his strikes, with a resulting shorter sentence of 18 years, a doubled base term plus 10 years.
Section 1385, subdivision (a) has been construed as authorizing trial courts "to dismiss not only an entire case, but also a part thereof, including the allegation that a defendant has previously been convicted of a felony." (Romero, supra, 13 Cal.4th at p. 508, 53 Cal.Rptr.2d 789, 917 P.2d 628.) *905 Subdivision (b) contains the following limit on this authority: "This section does not authorize a judge to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667." This limitation, enacted in 1986, was intended to abrogate People v. Fritz (1985) 40 Cal.3d 227, 219 Cal.Rptr. 460, 707 P.2d 833. (Romero, supra, 13 Cal.4th at p. 526, 53 Cal.Rptr.2d 789, 917 P.2d 628.)
The Three Strikes statutes, enacted in 1994, require prosecutors to plead and prove each prior felony conviction. (§§ 667, subd. (f)(1), 1170.12, subd. (d)(1).) These statutes further prohibit prosecutors from agreeing to dismiss or strike any prior felony conviction in a plea bargain. (§§ 667, subd. (g), 1170.12, subd. (e).) However, the statutes also allow prosecutors to move to dismiss or strike felony convictions under section 1385. (§§ 667, subd. (f)(2), 1170.12, subd. (d)(2).) The Attorney General contends that trial courts thus retain authority to dismiss allegations of prior felony convictions upon the motion of the prosecutor. (People v. Roman (2001) 92 Cal.App.4th 141, 145, 111 Cal.Rptr.2d 553; People v. Kilborn (1996) 41 Cal. App.4th 1325, 1333, 49 Cal.Rptr.2d 152.) Defendant replies that these cases do not apply to section 667, subdivision (a) enhancements.
We need not reach the issues whether these parts of the Three Strikes statutes only contemplate those serious felony convictions used for Three Strikes sentencing or whether the statutes have superseded section 1385, subdivision (b). We will not allow defendant to challenge the very judicial action to which he agreed in entering his plea bargain. A criminal defendant who receives the benefit of his plea bargain should not be allowed to seek to improve the bargain on appeal. (People v. Cepeda (1996) 49 Cal.App.4th 1235, 1239, 57 Cal.Rptr.2d 246, criticized on another ground by People v. Mendez (1999) 19 Cal.4th 1084, 1098, 81 Cal.Rptr.2d 301, 969 P.2d 146 [court struck two alleged strikes pursuant to bargain].) Even if the court's sentence exceeded its jurisdiction, a defendant cannot complain of getting what he bargained for so long as the court had fundamental jurisdiction. (Ibid.)
In People v. Webb (1986) 186 Cal. App.3d 401, 230 Cal.Rptr. 755, the defendant sought to challenge his plea bargain on appeal on the ground that it violated the restrictions in section 1192.7 about plea bargaining with serious felony convictions. The appellate court stated that an appellant is precluded "from raising issues favorable to himself." (People v. Webb, supra, at p. 411, 230 Cal.Rptr. 755.) Moreover, "[a]lthough subject matter jurisdiction cannot be conferred by estoppel, a party who seeks or consents to an act which is merely in excess of the court's jurisdiction may be estopped to complain of the ensuing action." (Ibid.) "Since section 1192.7 was not intended for the defendant's benefit, no public policy precludes estopping the defendant from using that section as a shield after consenting to the acceptance of a plea bargain." (Id. at p. 412, 230 Cal.Rptr. 755.)
For the same reasons, we conclude that defendant is estopped from complaining about the trial court striking two serious felony enhancements under section 667, subdivision (a), pursuant to defendant's bargain.

DISPOSITION
The judgment is affirmed.
WE CONCUR: RUSHING, P.J. and PREMO, J.
NOTES
[*] Judge of the Santa Clara Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] Unspecified section references are to the Penal Code.