Filed 5/9/13  P. v. Jones CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA EMMANUEL JONES,<br><br>    Defendant and Appellant. | B242178<br><br>(Los Angeles County<br>Super. Ct. No. NA090906) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Richard R. Romero, Judge.  Affirmed.

David Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael R. Johnsen and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Appellant Joshua Emmanuel Jones was charged with one count of grand theft (Pen. Code, § 487, subd. (a)),[1] one count of attempted grand theft (§§ 664/487) and five prior felony convictions within the meaning of section 1203, subdivision (e)(4). Appellant was charged with having committed a prior serious felony for the purpose of being committed to state prison, if convicted in the instant case.  (§ 1170, subd. (h)(3).) He was charged pursuant to section 667.5, subdivision (b) with having committed two felonies and with not remaining free of prison custody during a period of five years subsequent to the conclusion of these terms.  He was also charged pursuant to section 1170.12, subdivisions (a) through (d) and section 667, subdivisions (b) through (i), with one prior strike conviction.

A jury convicted appellant of attempted grand theft but deadlocked on the grand theft charge.  The court declared a mistrial on this charge.  The information was amended to allege a petty theft, a misdemeanor.  Appellant entered a plea of nolo contendere to this charge.

In a bifurcated proceeding, the court found that appellant had committed a prior serious felony for purposes of section 1170, subdivision (h)(3).  The court found true that appellant had suffered a prior strike conviction and that he had not remained free of custody during a period of five years after serving a term of conviction.

Appellant was sentenced to a term of four years in state prison for the attempted grand theft, composed of the high term of three years for attempted grand theft and one year under section 667.5, subdivision (b).  Appellant was sentenced to a concurrent term of six months in county jail on the misdemeanor conviction.

**FACTS**

The sole issue on appeal is the denial of appellant's motion made pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).  The pertinent facts and

---

[1]     All statutory references are to the Penal Code unless otherwise indicated.

2

circumstances of appellant's *Marsden* motion do not implicate the facts of the offenses of which he was convicted. Accordingly, we set forth only the salient facts.

### December 13, 2011 Incident

Albert T. Medina (Medina) placed an ad on Craigslist to sell a silver necklace with a white gold diamond pendant cross. He had purchased the necklace for $1,200 and was offering to sell it for $1,500. Medina received a telephone call from appellant. Medina and appellant agreed that appellant would trade a laptop for the necklace and an iPod. Medina and appellant agreed to meet at a location at 1531 Cowles Street in Long Beach. Appellant said his father worked there and would be able to test the metal to see if the diamonds were real.

On December 13, 2011, Medina, accompanied by this mother, went to the location. Medina's mother took a picture of appellant wearing the necklace. Appellant told Medina that he needed to go inside the shop so that his father could examine the necklace to ensure it was real. Appellant told Medina to wait outside because his father did not want anyone else to enter the store since he had been robbed previously. After appellant entered the store, Medina never saw him again.

### December 19, 2011 Incident

Salvador Mendoza, Jr. (Mendoza) put an ad on Craigslist to sell a gold chain which he had purchased for $6,200. Appellant contacted him and, after some negotiation over the telephone, agreed to buy it for $6,000. Appellant told Mendoza to meet him at 1531 Cowles Street in Long Beach. He told Mendoza that his father had a jewelry shop at that location and that his father could test the gold.

On December 19, 2011, Mendoza met appellant outside the shop. Appellant looked at the chain and said it would be 15-30 minutes before his father would be ready to test the gold. While they were waiting outside the shop, the police arrived and arrested appellant. The officer had the photograph of appellant, which had been taken by Medina's mother on December 13, 2011.

3

The police searched appellant's apartment and found a pawnshop receipt for Medina's necklace.

## The *Marsden* Hearings

There were four *Marsden* hearings in this case. Appellant challenges only the ruling denying his fourth and last *Marsden* motion. Because the complaint that appellant raised in the fourth *Marsden* hearing was presented in the prior hearings, we summarize the first three hearings.

The first *Marsden* hearing took place on February 23, 2012, a little less than two months before the trial commenced. The disagreement between appellant and deputy public defender Celine Bonillo was whether appellant should waive his preliminary hearing, as Ms. Bonillo had recommended. Appellant's complaint about Ms. Bonillo was that it was not as if Ms. Bonillo had done "anything wrong" but he was confused by the chaos in the courtroom and by his lawyer's advice. Once Ms. Bonillo explained her position about the preliminary hearing, and the court added its own observations, appellant stated that he understood, and the hearing was ended.

At the second *Marsden* hearing, which was held on February 28, 2012, appellant said that he wanted to be released on his own recognizance (O.R.) or have his bail dropped but Ms. Bonilla had not done anything about it. The trial court responded by pointing out that there were no changed circumstances justifying an O.R. release. The trial court asked defense counsel whether she had done any investigation. She said she had started to request interviews of the victims but had abandoned that after appellant told her he would retain private counsel. Defense counsel went on to state that appellant did not want to go to trial, he wanted a deal, but he did not seem to understand that the recent strike prior had doubled his sentence; she had tried to strike the prior conviction without success. Appellant complained that defense counsel had done nothing; she had filed no motions. The trial court explained that the case was actually a simple one, that defense counsel would talk to the victims to see if she could "poke a hole" in the case, but that there was nothing more anybody could do. Appellant then asked why he was not

4

being released O.R.  After the trial court once again explained that no one, including this court, would grant an O.R. release to appellant, the hearing concluded with appellant's remark that "[s]he's not trying to help me."

The third *Marsden* hearing was conducted on March 19, 2012, five days prior to trial.  Appellant said that he had receipts and bank statements which would show that he had a falling out with the auto shop employee who would testify that the employee did not know appellant.[2]  After the trial court pointed out that there was still time to hand the receipts and statements over to counsel, appellant said the materials were in his car but that defense counsel had done nothing to get them.  He added that "later on that evening" he had been at Hustler's Casino but counsel had not obtained videotapes that would show that.  Ms. Bonillo stated that this was the first time she had heard about evidence that the auto shop employee knew appellant and about Hustler's Casino.  Appellant then complained about the deal that had been offered.  The trial court stated that Ms. Bonillo was doing a "very good job on your behalf" and thought that appellant was trying to postpone the trial with these last minute complaints.

The fourth *Marsden* hearing was held on May 14, 2012, in the midst of jury selection.  We set forth the entire hearing:

"THE COURT:  And, Mr. Jones, the D.A. has left.  So what's the conflict of interest?

"[APELLANT]:  All right.  Mr.—Your Honor Romero, for one, everything has been short notice with this whole allegation of what's going on with me.  And the—as far as getting it dropped to petty theft, it was because of the value or whatever, that right there was—basically made me think that it was going to be lesser charges without the priors—with the petty theft priors.  So I think that the D.A. should have gave [*sic*] us enough time to get more on our behalf as far as the defense.  I mean, I don't see why I couldn't get more time as far as short notice with her where—dropping it to petty theft with a prior with the conviction if I was to get, you know, convicted.  And I feel like

---

[2]    One of the employees of the auto shop testified that he did not know appellant.

that's a conflict of interest that me and my attorney—we just—she's saying we gonna [*sic*] get—I'm gonna [*sic*] get sentenced to the max. I mean, I don't see that she's gonna [*sic*] fight for me. I don't know. I want a state-appointed.

"THE COURT: Mr. Jones, lawyers are told to fight for their clients, whether it's prosecution or defense, regardless of what the lawyer thinks about the case. And it's her job to defend you, and she is doing a good job. She will continue to do a good job whether you accept the offer or not. Even if she were to think you were guilty, that doesn't affect the way she defends the case because it doesn't matter what the lawyers think. Her job is to put up the best defense, and she will do that for you. She has so far. She's been making vigorous motions. So there is no basis to change counsel. The court determines there is no basis for the *Marsden* motion. The reporter's notes are sealed pending further order of the court.

"[APPELLANT]: I wasn't done.

"THE COURT: You're done.

"[APPELLANT]: I wasn't done.

"THE COURT: Yes, you are.

"[APELLANT]: One more thing.

"THE COURT: No."

## DISCUSSION

*Marsden* was a case in which the defendant sought to give specific instances that caused him to be dissatisfied with his defense counsel. The trial court, however, specifically foreclosed the defendant from stating the specific reasons that defense counsel's performance was unsatisfactory. (*Marsden, supra,* 2 Cal.3d at pp. 121–122.) The court held: "Thus, a judge who denies a motion for substitution of attorneys solely on the basis of his courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion to determine the competency of the attorney. A judicial decision made without giving a party an

6

opportunity to present argument or evidence in support of his contention 'is lacking in all the attributes of a judicial determination.' [Citation.]" (*Id.* at p. 124.)

"A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations]." (*People v. Crandell* (1988) 46 Cal.3d 833, 854.)

The decision whether to grant a *Marsden* motion is within the discretion of the trial court; on appeal, the question is whether that discretion was abused. (*People v. Abilez* (2007) 41 Cal.4th 472, 488.)

Appellant contends the trial court did not allow him to explain the conflict between counsel and himself. As the record shows, the trial court terminated the hearing despite appellant's efforts to continue to address the court. Appellant claims the "trial court had no way of knowing what appellant had intended to assert, and hence had no way of knowing that it lacked merit." Appellant contends he was treated just as the defendant in *Marsden* was treated by the trial court.

The record shows that appellant was given an opportunity to state what the conflict of interest was and that he availed himself of that opportunity. His complaint was that defense counsel was not going to "fight" for him. The issue therefore is not as the issue was in *Marsden* where the trial court did not allow the defendant to give any specific reasons why he was dissatisfied with his lawyer. The issue in this case is whether the trial court abused its discretion in terminating the hearing.

We begin with the observation that the trial court must be given some latitude in conducting a *Marsden* hearing. The trial court had some knowledge of the defendant and also had the defendant under observation as he was making the *Marsden* motion. Thus, there were indications of the defendant's seriousness of purpose that were apparent to the trial court but that do not appear in the written record. Appellant had already made three prior *Marsden* motions, so the trial court was well acquainted with appellant, at least

7

from the perspective of a *Marsden* hearing. The trial court was in a good position to judge whether appellant had anything further to say that was likely to be relevant.

We cannot say that the trial court abused its discretion or erred in terminating the hearing. It is the judge and not the defendant who has the responsibility of running his or her courtroom. Appellant made no showing that counsel was ineffective or that there was, in fact, a serious and irreconcilable conflict, which are the touchstones of a *Marsden* motion. (*People v. Crandell, supra*, 46 Cal.3d at p. 854.) The trial court can therefore not be faulted for deciding to move the case along by ending the hearing.

While it is clear that the trial court must give the defendant an opportunity to state why he is dissatisfied with counsel, it is also true that it is the defendant's responsibility to give cogent reasons for a change in representation. Appellant was given an opportunity to state why he wanted his lawyer discharged but the record reflects that there were no valid reasons to do so. And while the denial of the fourth *Marsden* motion must stand or fall on its own merits, ". . . a defendant is not entitled to keep repeating and renewing complaints that the court has already heard." (*People v. Vera* (2004) 122 Cal.App.4th 970, 980.) Each of the complaints raised by appellant in his fourth *Marsden* hearing was essentially duplicative of complaints he had raised at the three earlier hearings. As in *People v. Clark* (2011) 52 Cal.4th 856, 918, appellant cannot demonstrate that the trial court abused its discretion because his fourth request "was based primarily on points raised in the previous *Marsden* hearings." Having heard nothing that it had not heard previously, the trial court acted within the exercise of its sound discretion in terminating the fourth hearing.

Appellant did not think that defense counsel would "fight" for him. We construe that to mean that he did not trust her to conduct his defense. It has been held, however, that a defendant's lack of trust in defense counsel is not grounds to relieve counsel. (*People v. Berryman* (1993) 6 Cal.4th 1048, 1070, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

8

We conclude that the trial court did not abuse its discretion in the way it conducted the fourth *Marsden* hearing and therefore find there was no error.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J. *

       FERNS

We concur:


_____, P. J.

   BOREN


_____, J.

   ASHMANN-GERST

---

\*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.