Filed 8/6/24  P. v. Greenlee CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTOPHER ROBERT GREENLEE,<br><br>    Defendant and Appellant. | B316466 consolidated with B329824<br><br>(Los Angeles County Super. Ct. No. KA055428) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Affirmed as modified.

Lori A. Nakaoda, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Marc A. Kohm and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

In 2002, appellant Christopher Greenlee was convicted of first degree burglary and other crimes arising from an incident in which he served as a getaway driver for a companion who sprayed and bludgeoned a man with a can of chemicals and stole a safe from appellant's acquaintance. Due to prior strike convictions he suffered in 1991 and 1992, appellant was sentenced to a third strike term of 25 years to life for the first degree burglary.

As part of his most recent challenge to his sentence, appellant moved to strike his strike priors under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. Appellant also moved to substitute his appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). The trial court denied the motions, which appellant contends was an abuse of its discretion. However, we agree with appellant and respondent Attorney General that the abstract of judgment must be corrected to reflect the previous redesignation of one of appellant's felony convictions to a misdemeanor. We accordingly direct the trial court to prepare an amended abstract of judgment and send a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

## BACKGROUND

### I.    Facts[1]

On December 21, 2001, a contractor was working at a house owned by Steve Williams, an acquaintance of appellant's through appellant's wife.  The contractor saw appellant driving a small blue car, which appellant stopped in front of the house.  As appellant spoke to a passerby, a man wearing a hoodie started walking up the house's driveway, but then walked away.  Appellant drove away.  Soon, the man in the hoodie reappeared and asked the contractor when he could see Williams.  When the contractor removed his safety glasses, the man sprayed the contractor's face with a chemical spray can, pushed him to the ground, and struck his head and shoulders with the can.  The man took a personal safe owned by Williams and entered the passenger side of a small blue car, which sped off.  The car almost hit a nearby driver, who wrote down its license plate number and gave it to the police.  The police determined the car was registered to appellant's wife.

### II.    Conviction, Sentence, and Direct Appeal

A jury convicted appellant of first degree burglary (Pen. Code, § 459)[2], assault with a deadly weapon—the metal can—by means likely to produce great bodily injury (§ 245, subd. (a)), and petty theft with five prior theft-related convictions (§ 666). The

---

[1]    We draw the brief factual summary here from the most recent appellate opinion in this matter, *People v. Greenlee* (Oct. 28, 2020, B299345) [nonpub. opn.] (*Greenlee VI*).  A more detailed summary can be found in the opinion resolving appellant's direct appeal, *People v. Greenlee* (Dec. 3, 2003, B162012) [nonpub. opn.] (*Greenlee I*).

[2]    All further statutory references are to the Penal Code unless otherwise indicated.

3

court subsequently found true allegations under sections 667, subdivisions (a) through (i), and 667.5, subdivision (b) that appellant sustained first degree burglary convictions in June 1991 and October 1992. The trial court denied appellant's *Romero* motion to strike the strike priors.[3] It sentenced appellant to a third strike term of 25 years to life for the burglary, and concurrent terms of 25 years to life for the assault and petty theft with priors; the court stayed the sentence for the petty theft with priors under section 654. The court explained that it imposed concurrent sentences in light of "the obvious length of" the sentence for the first degree burglary and "the nature of the weapon and the nature of the degree of force [were] substantially less than other types of weapons that are typically used." The court nevertheless ordered the sentences it imposed on the two five-year prior enhancements and three one-year prior

---

[3] The portion of the reporter's transcript in the appellate record does not include the court's ruling on the *Romero* motion. However, the trial court read the following into the record during the February 27, 2023 hearing, stating that it was quoting the original sentencing court: "The court recognizes that it has discretion to strike the enhancements under the Three Strikes You're Out law. The discretion is not unfettered, but the court has to find special or unusual circumstances that warrant the striking and that the striking would promote the interest of justice. The defendant is convicted in the most recent matter of an identical crime for which he has gone to prison on two separate occasions within the last 10, 11 years. Upon his release from his most recent incarceration, defendant returned to the identical type of crime. The residence was occupied at that time. The crime was deliberate and premeditated. The court finds that there are no unusual circumstances that warrant the striking of any strikes."

4

enhancements to run consecutively, bringing appellant's total sentence to 38 years to life.

Appellant challenged his convictions and sentence on direct appeal. In *Greenlee I*, a different panel of this court affirmed the convictions but agreed with appellant that two of the one-year prior enhancements were improperly imposed. The court struck those two enhancements and ordered the abstract of judgment modified to reflect the corrected sentence of 36 years to life. (See *Greenlee I, supra*.)

## III. Subsequent Proceedings

After Proposition 47 took effect in 2014, appellant filed several petitions to redesignate his previous felony convictions as misdemeanors. The trial court denied his petitions to redesignate his 1991 and 1992 strike convictions for first degree burglary. (See *People v. Greenlee* (June 28, 2017, E068142) [nonpub. opn.] (*Greenlee III*); *People v. Greenlee* (Aug. 16, 2017, E068280) [nonpub. opn.] (*Greenlee IV*).) But the trial court granted his petition to redesignate his 2002 felony conviction for petty theft with a prior to a misdemeanor. (See *People v. Greenlee* (Feb. 16, 2017, B268860) [nonpub. opn.] (*Greenlee II*).) Appellant then filed a petition to strike the remaining one-year prior enhancement, which was based on the redesignated conviction. The trial court denied that petition, and a different panel of this court affirmed. (See *id*.) The Supreme Court granted appellant's petition for review, vacated *Greenlee II*, and directed the appellate court to reconsider the matter in light of *People v. Buycks* (2018) 5 Cal.5th 857. (*People v. Greenlee* (Jan. 23, 2019, B268860) [nonpub. opn.] (*Greenlee V*).) The appellate court remanded the matter to the trial court with directions to strike the remaining one-year prior enhancement and exercise its

newly granted discretion to determine whether the five-year prior enhancements should be stricken.  (*Id.*)

On remand, the trial court struck the one-year prior enhancement but declined to strike the five-year prior enhancements after finding that doing so would not promote the interests of justice.  (*Greenlee VI, supra.*)  Appellant appealed, and a different panel of this court conditionally reversed after finding that the trial court "violated [appellant's] right to counsel by resentencing him in the face of his counsel's repeated and unequivocal admissions that he was wholly unprepared to assist appellant," and proceeded with the hearing "without securing a knowing and voluntary waiver of his right to counsel."  (*Id.*)  The appellate court reversed appellant's sentence and remanded to the trial court "with instructions to consider, at a resentencing hearing at which appellant receives the assistance of counsel (unless he knowingly and voluntarily waives his right to counsel), whether to exercise its discretion to strike the two five-year enhancements imposed under Penal Code section 667."  (*Id.*)  The remittitur was filed on December 30, 2020.  The instant consolidated appeals arise from the proceedings on remand.

IV.    **Proceedings on Remand**

    A.    *Romero* **Motion and Initial Hearings**

On January 13, 2021, appellant, acting in propria persona, filed a 42-page *Romero* motion to which he attached hundreds of pages of exhibits.[4]  Appellant requested that the "strike priors be

---

[4]    Appellant also filed a request for resentencing under section 1170, subdivision (d)(1) and a request for preservation of the exhibits introduced at his 2002 trial.  The trial court denied the request for resentencing under section 1170, subdivision

stricken because he has been fighting drug and alcohol addictions for the past 30 years prior to his original sentencing hearing on October 4, 2002, addictions his conflicted trial attorney refused to investigate and/or bring to the trial court [*sic*] attention; his prior offenses were not violent and he was only 21 and 22 years old when he sustained his 1991 and 1992 enhancement strike priors; and his criminal history consist [*sic*] of property crimes committed while he was intoxicated under the influence of alcohol and drugs." Appellant asserted that his previous appointed attorneys "failed to properly investigate the facts and/or circumstances of his enhancing strike prior cases and present the mitigating evidence to the court," the probation report contained various errors,[5] and many records in his case had been lost. He also claimed that his sister-in-law, who is a

---

(d)(1) on January 27, 2021 due to appellant's lack of standing to bring the motion. It denied the request for preservation of trial exhibits on February 1, 2021, noting that "there is no substantial right the defendant is attempting to enforce."

[5]    The trial court ordered the People to investigate the alleged errors, which were addressed over the course of several hearings, the details of which we omit here. After the People submitted an eight-page rap sheet, a 90-page certified "969B packet," a document summarizing those two items, and a copy of the original probation report, the court found that the probation report contained a single error: appellant "was convicted for receiving stolen property and not for battery against a peace officer." It further found that the original sentencing court did not rely on any erroneous convictions in denying appellant's original *Romero* motion, and that "no reasonable judge would have relied on the erroneously listed convictions, assuming they were erroneously listed convictions, in denying the *Romero* motion."

court reporter, unduly influenced him to plead guilty to the 1992 offense and falsified transcripts related to both the 1991 and 1992 offenses. The trial court, Judge Juan Carlos Dominguez,[6] issued a minute order on January 26, 2021 stating that it had "received, read, and considered" appellant's motion and was not taking action "at this time pending re-sentencing hearing."

On May 12, 2021, the trial court indicated that its tentative ruling was to exercise its discretion in favor of striking both five-year prior enhancements based on the burglary convictions. When the court invited the parties to address the tentative, appellant's newly appointed counsel raised the issue of appellant's pending pro per *Romero* motion to strike the same burglary convictions from counting as strikes and requested a continuance to review the motion and other "substantial information" appellant had provided. The trial court continued the matter.

The parties returned on November 1, 2021. At that hearing, the court stated that the only thing it could do given the remittitur was exercise its discretion whether to strike the five-year prior enhancements based on the previous burglary convictions; it stated that it "cannot revisit . . . the three strikes or *Romero* motion or any of those things." The court noted that

---

[6] Judge Robert M. Martinez presided over appellant's 2002 trial and much of the post-trial proceedings. After Judge Martinez retired, the matter was reassigned to Judge Juan Carlos Dominguez, who presided over most of the hearings relevant to this appeal. Judge Martinez returned to the bench briefly, and the matter returned to him for a January 18, 2022 hearing not relevant here. Judge Martinez subsequently became unavailable, and Judge Dominguez presided over the remainder of the proceedings and made the rulings at issue here.

appellant had "filed a lot of documents" pertinent to the latter issues, but the court believed it was constrained by the remittitur and also its inability to reconsider previous rulings by Judge Martinez, including his denial of appellant's 2002 *Romero* motion. The court ultimately exercised its discretion to strike the five-year prior enhancements, noting that the 1991 and 1992 convictions giving rise to those enhancements were also strike convictions that led to appellant's third-strike sentence. It imposed a sentence of 25 years to life and awarded appellant 6,971 days of custody credit; the court documented the updated sentence and custody credits in a new abstract of judgment.

Appellant filed a notice of appeal on November 12, 2021. He asserted that the court erred by declining to consider and thus effectively denying his *Romero* motion.

Shortly thereafter, the trial court concluded that appellant "was entitled to a full resentencing hearing which includes the *Romero* motion that you've been trying to bring." Appellant's appointed appellate counsel notified us of this development, and we issued an order staying appellant's appeal and holding the matter in abeyance "pending the final disposition" of the matter in the trial court.

### B.    Subsequent Filings

On December 30, 2022, appellant filed a 69-page *Marsden* motion, plus accompanying exhibits. Appellant asserted that his appointed counsel had not properly responded to the 60 letters appellant sent him or investigated his background for purposes of the *Romero* motion. Although appellant withdrew this motion at a February 27, 2023 hearing, he "realleges and/or asks the ct. to respond to the issues" it raised in the subsequent *Marsden* motion discussed below.

9

On February 6, 2023, appellant's counsel filed a *Romero* motion. The motion primarily highlighted the probation report errors alleged by appellant. It also noted that appellant had served over 20 years "with no violence in his background" and requested that the court strike appellant's prior strikes in the interest of justice. The motion was accompanied by a declaration from appellant in which he detailed his "exceptional conduct" during his incarceration, including "giving information regarding life and death situations." Appellant also asserted that he had "been an active participant in self-help and rehabilitative programming" since 2003 and earned "a significant amount of certificates and raving work reviews."[7] He further asserted that he had suffered from Covid-19 and Valley fever while incarcerated.

Appellant filed a second *Marsden* motion on March 20, 2023. Appellant asserted that counsel failed to timely file a motion to disqualify the court and refused to let him review discovery from the People, provide him with copies of the exhibits from the *Romero* motion appellant filed in January 2021, or conduct any sort of investigation into his background. He also asserted that counsel made false representations to the court, was dismissive of appellant's concerns about lost records and his request to file a motion for relief under the Racial Justice Act, and was rude to appellant. On March 21, 2023, the trial court issued an order stating that it would hear the motion on April 12,

---

[7]    Appellant lodged several exhibits containing documentation of his efforts and achievements in early 2019, after *Greenlee V* was filed but before the remittitur issued. (See *Greenlee VI, supra*.)

2023, at the next scheduled hearing.  Appellant filed a declaration in support of the *Marsden* motion on April 3, 2023.

On April 11, 2023, appellant's counsel filed a second *Romero* motion.  In the motion, counsel argued that the interests of justice required striking appellant's strike priors.  He highlighted mitigating factors relating to the 2002 crime, including appellant's "minor role," the lack of serious injury to the victim, and appellant's drug addiction.  Counsel further asserted that appellant "voluntarily acknowledged wrongdoing at an early stage of the criminal process,"[8]  Counsel also highlighted appellant's good conduct and rehabilitative efforts while incarcerated and his acceptance into a long-term housing program.  Additionally, counsel noted a remaining discrepancy in the probation report and included appellant's claims that loss and destruction of his records "resulted in his case being irreparably damaged and harmed."

### C.    Hearings

#### 1.    *Marsden* Motions

On April 12, 2023, the court began the proceedings by hearing appellant's *Marsden* motions.  The court stated that it had reviewed appellant's filings and asked him to summarize his most salient concerns with current counsel.  Appellant asserted that he had provided counsel with the names of "30 or 40 plus" witnesses who could support his *Romero* motion claims and "begged and implored" counsel to investigate, but counsel refused

---

[8]    This assertion was based on a statement in the probation report that appellant "admitted to his part in the crime" immediately after his arrest.  Appellant was found guilty after a jury trial, and the court found the prior allegations true at a subsequent bench trial.

to do so and one of the witnesses was now deceased. The court stated that the only issue before it was whether Judge Martinez's denial of appellant's 2002 *Romero* motion had been influenced by inaccuracies in the probation report and asked appellant to "stay focused" on that. The court further stated that appellant appeared to "want to reopen the whole case," that appellant's counsel agreed to represent him after "two or three declined to accept the appointment because of your reputation," and that counsel had successfully argued for a sentence reduction of 10 years in his case. Appellant then told the court, "You know, from this point we can probably wrap this up within the next two or three minutes," since the court "did indicate that it read the 200 pages plus *Marsden* motion" and "[w]e don't need to go back over everything."

The court then invited counsel to make his record. Counsel stated that he had 40 years of experience as a criminal defense attorney and had "spent many hours" on appellant's case, including reviewing the "over 60 letters, that is 6-0, that have been sent to my office." He further stated that he "investigated what I needed to on the *Romero* motion," and had filed points and authorities in support of the motion that included information about allegedly invalid prior convictions at appellant's "insistence." Appellant responded that various lost or destroyed records "would have proved that the priors were invalid" due to his sister-in-law's involvement and his lack of a knowing and intelligent waiver of his right to jury trial.

The court told appellant that he could not relitigate his convictions. It then found that appellant's counsel properly represented him and would continue to do so. The court observed that appellant had filed numerous *Marsden* motions throughout

12

the course of the case and seemed to do so "if the attorney does not do exactly what you want them to do." The court stated that an attorney "is not to be a yes man" and instead "is to properly advise you and to give you guidance and not do to things that are not appropriate." It denied the motions.

### 2. *Romero* Motions

Upon returning to open court, the trial court acknowledged its error in failing to allow argument on the *Romero* motions at the November 1, 2021 hearing and invited counsel to "argue whatever you deem appropriate."

Appellant's counsel directed the court's attention to appellant's declaration and claims that he had assisted correctional officers and had done well in college classes while incarcerated. Counsel also argued that appellant was "an addicted drug offender who "was suffering from extreme drug abuse" at the time of the most recent crime, and had tried to get help but was unable to do so. Pointing to evidence of a mental status exam conducted in 2002, counsel argued that appellant "was involving himself in these burglaries and in these theft cases, receiving stolen property and residential burglaries because of the extreme drug situation that he had." Counsel further asserted that appellant "alleged he was a victim of childhood abuse and trauma, both physically and mentally," had been attacked on multiple occasions while incarcerated, and was unable to litigate the matter as he wished due to the loss or destruction of his records. Counsel additionally argued that appellant suffered his prior strike convictions over 30 years ago and had served approximately 22 years in prison, and that the interests of justice required striking the prior strike convictions and resentencing appellant to a non-third-strike term.

The People responded that the *Romero* motion should be denied because appellant's "record shows a pattern of property offenses which has been continued, unabated despite significant prior court sanctions being imposed." They further argued that appellant's role as the getaway driver in his third strike offense was not as minimal as appeared, because appellant knew the victim and "was the mastermind" of the crime.

After remarking that residential burglaries are severe because they "invad[e] someone's home" and "completely shatter[ ] their sense of security," the court made its oral ruling. It stated, "repeated actions by an individual, notwithstanding his drug abuse, is just not a motivating factor. Now, we have to realize that. [¶] We have had a lot of laws that have come through that have affected 1385 and . . . that applies to enhancements. It does not apply to a third strike conviction. The third strike legislation is a separate and distinct sentencing scheme. It is not an enhancement. [¶] So the court, obviously, when on a resentencing considering striking a strike, the court, of course, should take a look at prior drug abuse, youths [*sic*], and those types of things in order to make an informed decision, but it doesn't fall within the guidelines that are contained in 1385 because that applies to enhancements. But assuming for the moment that it did apply to a strike conviction, the court does not find under 1385 any mitigating evidence that the court should exercise."

The court continued, citing *People v. Beasley* (2022) 81 Cal.App.5th 495 for the proposition that "the court's great power to dismiss a prior strike conviction should only be used in extraordinary circumstances when the ends of justice demand it. In exercising its discretion, the trial court must consider whether

14

in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, in [*sic*] the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme spirit [*sic*] in whole or in part, and hence should be treated as though he had not been previously convicted of one or more serious or violent felonies. [¶] And, of course, the court must remember the Three Strikes law is not discretionary in nature. Rather, the law must be applied when the defendant has two or more prior strikes unless the court concludes an exception to the law should be made because, for articulable reasons that can withstand scrutiny for abuse, the defendant lies outside the spirit of the law such that he should be treated as though he had not been previously convicted of one or more felonies."

The court then noted that appellant was "expected to behave in state prison," and there was no corroboration of his claims that he assisted law enforcement while incarcerated. It then turned its attention to "the time he did these things, committed this offense." The court stated that appellant "targeted a friend, . . . conspired to steal the safe," and his coconspirator struck the victim with a can." It then concluded its remarks, stating, "based on the forgoing [*sic*], the court denies the *Romero* motion. The sentence issued by the court in response to the remittitur will stand." The court did not update appellant's custody credits or prepare a new abstract of judgment.

Appellant timely filed a notice of appeal. We lifted the stay on his previous appeal and consolidated the two appeals for all purposes.

15

## DISCUSSION

### I.  *Romero* Motions

A trial court must decide whether to strike a prior strike by considering factors that are intrinsic to the Three Strikes law's sentencing scheme.  (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)  These factors include: (1) the nature and circumstances of the current conviction; (2) the nature and circumstances of the prior strike conviction; and (3) the defendant's "background, character, and prospects."  (*Ibid.*)  If the defendant falls outside the spirit of the Three Strikes law, the court may, in furtherance of justice, treat the defendant "as though he [or she] had not previously been convicted of one or more serious and/or violent felonies."  (*Ibid.*; see also *Romero*, *supra*, 13 Cal.4th at pp. 529-530; § 1385, subd. (a).)  We review a trial court's denial of a *Romero* motion for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373.)  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*Id.* at p. 377.)  "We presume the trial court has considered all relevant factors in the absence of an affirmative record to the contrary," and that it "correctly applied the law."  (*People v. Edwards* (2022) 76 Cal.App.5th 523, 529.)

### A.  Failure to Consider Relevant Factors

Appellant contends the trial court abused its discretion by failing to consider factors relevant to the nature and circumstances of appellant's prior strike convictions and his most recent offense.  Those factors include appellant's youthful age at the time of the strike priors, his "addicted offender" status at the time of all three crimes, and his prospects for rehabilitation.

16

### 1. Youthful Age

In light of "'scientific evidence that neurological development, particularly in areas of the brain relevant to judgment and decision making, continues beyond adolescence and into the mid-20's'" (*People v. Hardin* (2024) 15 Cal.5th 834, 846), a defendant's youthful age at the time of an offense has been recognized as a relevant consideration in numerous areas of criminal law. (See *People v. Jimenez* (July 22, 2024, D081951) ___ Cal.App.5th ___, WL 17350938, at p. *6.) Indeed, "even if not dispositive, [youthful age] is plainly relevant to the nature and circumstances of the strikes and could be a mitigating factor." (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1142.) Youthful age is generally defined as under age 26. (See, e.g., § 1016.7, subd. (b); § 1170, subd. (b)(6)(B); § 3051; § 4801, subd. (c).)

At the time of his strike convictions for first degree burglary, appellant was 21 and 22 years old. Appellant raised the issue of his youthful age at the time of these offenses in his pro per *Romero* motion, which the court "received, read, and considered." The court also specifically recognized that "on a resentencing considering striking a strike, the court, of course, should take a look at prior drug abuse, youths [*sic*], and those types of things in order to make an informed decision." The court nevertheless concluded that, on balance, it "does not find under [section] 1385 any mitigating evidence that the court should exercise." Contrary to appellant's claim that the court "clearly did not consider youth as a factor specific to Mr. Greenlee," and failed to "genuinely take into consideration a youthful offender's differences," the court's remarks indicate that it considered appellant's age but accorded it less weight than appellant would prefer. This was not an abuse of discretion.

17

Appellant also asserts that his "youth (and its accompanying lack of maturity) was plainly relevant to the nature and circumstances of the burglaries used to greatly inflate his sentence." However, nothing in the voluminous record indicates that "hallmark features of youth," such as "immaturity, impetuosity, and failure to appreciate risks and consequences" (*Miller v. Alabama* (2012) 567 U.S. 460, 477), or an increased susceptibility to peer pressure (*People v. Ramirez* (2021) 71 Cal.App.5th 970, 991), played an appreciable role in appellant's commission of these offenses. Notably, appellant committed the same crime for a third time at age 31 in 2001.

### 2.    Addicted Offender

A defendant's drug addiction may be considered a mitigating factor in the context of a *Romero* motion. (See *People v. Garcia* (1999) 20 Cal.4th 490, 503; *People v. Avila, supra*, 57 Cal.App.5th at pp. 1143-1144; Cal. Rules of Court, rule 4.423(b)(2). ) However, this factor may also cut the other way "where the problem is long-standing" and unaddressed. (*People v. Avila, supra*, 57 Cal.App.5th at pp. 1144.)

Appellant contends that although "addiction provided the backdrop to all three strike convictions," the court "failed to properly consider evidence of Mr. Greenlee's status as an addicted offender with mental health issues." Appellant points to various evidence in the record, including his 1991 conviction for possession of drug paraphernalia, exhibits attached to his pro per *Romero* motion showing his "disadvantaged" and "dysfunctional" background, and statements appellant made about his substance use during a 2002 mental status exam.

Appellant's counsel expressly called the court's attention to appellant's "extreme" struggles with drug use, both orally and in

18

his written *Romero* motion. Appellant's pro per *Romero* motion and accompanying exhibits also discussed his alcohol and drug use. As noted above, the court indicated it reviewed the evidence appellant submitted, and it directly referenced "prior drug abuse" when ruling on the *Romero* motions. It concluded that "repeated actions by an individual notwithstanding his drug abuse, is just not a motivating factor." It is clear from the court's remarks that it considered appellant's substance abuse issues.

Appellant argues that the court also erred to the extent its comments about his repeated actions "can be construed as a reference to Mr. Greenlee's purported failure to address his addiction problem." There is no basis to construe the court's comments in this fashion. The context of the court's remarks indicate that it was referring to appellant's continuous criminal history, including repeated first degree burglaries.

Appellant asserts that his "criminal conduct consisted entirely of theft-related offenses (petty theft, receiving stolen property, burglaries) committed to f[u]nd and/or finance his addictions," and he "was not out committing random acts of violence such as carjacking or armed robberies." A crime need not be random or violent to qualify as a strike offense; the Three Strikes law applies to "those who commit a felony and have been previously convicted of one or more *serious or violent* felony offenses." (§ 667, subd. (b); see also § 1170.12, subd. (a).) First degree burglary is a serious felony by definition (§ 1192.7, subd. (c)(18)), and the court recognized that "invading someone's home, in whatever fashion . . . goes [*sic*] more than the person missing their t.v.[;] it completely shatters their sense of security in a place where you should feel secure." The court also observed that during a residential burglary, "the homeowner is probably going

to react . . . to protect their family, themselves, or their property," and the contractor victim of the current offense was hit in the head with a can. Appellant dismisses these observations as "arbitrary speculation" that "bases the severity of punishment on what could have been, rather than what was." However, the third strike sentence was imposed for the most recent offense, in which the victim was injured.[9] Victim vulnerability is a proper aggravating factor, as is the use of a weapon. (Cal. Rules of Court, rule 4.421(a)(2), (a)(3).)

### 3.    Prospects for Rehabilitation

Appellant contends the court did not consider his prospects for or efforts toward rehabilitation, including his good behavior, educational achievements,[10] self-help for mental health issues, and acquisition of employable skills. He further contends the court did not consider his lack of violent offenses, the redesignation of some of his felonies to misdemeanors, and the relatively minor nature of the can-based assault, which appellant emphasizes was completed by the other participant in the offense. He asserts that these facts all demonstrated that his

---

[9]    Appellant was sentenced to two years for the 1991 first degree burglary, and eight years for the 1992 burglary.

[10]    Appellant asserts that he "took adult education classes and passed the GED examination," but the record reflects that appellant obtained his GED in 1988, prior to the beginning of his criminal history in late 1989. The record does support appellant's assertion that he took and did well in college classes while incarcerated. He took "Health 140" in 2012 and "Intro to Addiction Studies" in 2017. The record also indicates that appellant successfully completed "Vocational Greenhouse and Nursery Operations" in 2006, "Forklift Operator Certification" in 2018, and was certified as a tractor-trailer driver while he was out of custody in 2001.

"prospects for change were promising," particularly in light of the "punitive length" of the third strike sentence, "which is a very long sentence for a first violent offense given that the nature and degree of force was substantially less than that typically used."

As appellant acknowledges, his trial counsel "referenced some of these records in the *Romero* motion." The court referred to appellant's behavior while incarcerated, stating, "And his comportment in state prison, he is expected to behave in state prison." The court also specifically cited case law recognizing its obligation to "consider whether in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, in the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme spirit [*sic*] in whole or in part."

The court's statements reveal that it was aware of its obligation to consider and did consider appellant's behavior in prison. The court also had before it various records documenting appellant's intermittent participation in self-help and educational programming, and laudatory statements from his supervisors at the CAL/PIA General Fabrication facility within his place of incarceration. We presume the court considered these materials and did not find them compelling in light of the aggravating factors.

We further presume, particularly in light of the extensive focus on alleged errors in appellant's probation report (see fn. 5, *infra*), that the trial court was aware of the nature of his previous offenses, including those redesignated as misdemeanors. As discussed above, the lack of violent offenses in appellant's criminal history did not remove him from the ambit of the Three Strikes law, which by its terms applies to serious felonies as well.

21

The court also made no mention of the misdemeanor offenses; it focused instead on the previous serious felonies, noting that "any judge would hang their hat on[ ] those two prior convictions."

Appellant has not shown the trial court abused its discretion by failing to consider relevant factors.

**B.     Consideration of Improper Factors**

Appellant asserts the trial court abused its discretion by considering factors outside the ambit of the Three Strikes law, though the substance of this argument appears to be that the court made factual findings unsupported by the record. Specifically, appellant states that "the court was particularly offended by the idea that the homeowner was Mr. Greenlee's friend, and that the homeowner was injured by Mr. Greenlee's actions. These assumptions are not supported by the record." He further asserts that the court's "misapprehension of the underlying facts pertaining to Mr. Greenlee's actual conduct led to the court's misapplication of the law by focusing solely on the current offense to the exclusion of the other *Williams* factors." Appellant also argues that his counsel rendered ineffective assistance by failing to object to the court's "misapprehension of the facts of the current offense" and its "improper reliance exclusively on that offense as the basis for denying the *Romero* motion."

Although the court perhaps used the term "friend" loosely, there is no dispute that the homeowner whose home and safe were targeted in the offense was appellant's acquaintance. The People made that clear to the court during their argument, stating that the victim "knew the defendant whose wife was a friend of an old roommate." As respondent asserts, "[t]his fact was important because it indicated that this was not a random

crime of happenstance, but one that appellant himself premeditated because of knowledge he had gained from his contacts with the victim or with people close to the victim. The point was not that appellant had a close friendship with the victim, but that his insider knowledge was the linchpin for the robbery." Similarly, the court appears to have misspoken when it stated that the person injured in the burglary was the homeowner; the person sprayed with chemicals and bludgeoned with a can was a contractor working in the homeowner's garage. Appellant contends this indicates that the court "based its decision [on] things that did not actually happen," but the contractor was indeed physically harmed with a weapon during the course of the crime. As noted above, use of a weapon during a crime is a proper aggravating factor, and the court's concern that a homeowner would "react to protect their family, themselves, or their property" encompasses people on the property aside from the homeowner. We do not find an abuse of discretion in the court's minor misstatements.

Nor do we find that appellant's counsel rendered ineffective assistance by failing to correct the misstatements or otherwise object to the court's handling of the *Romero* proceedings. To demonstrate that counsel was ineffective, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range

23

of reasonable professional assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) "[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 502.) This is not one of the rare cases in which it does. Even if the court had corrected its misstatements—which it demonstrated a willingness to do when the People clarified that the weapon was a can instead of a lock—there is no reasonable probability that its ruling would have been different. As discussed above, the court took evidence and heard argument regarding factors other than the current offense. Appellant's counsel was not ineffective for failing to object to the court's discretionary weighing of these factors.

## II.    *Marsden* Motions

A criminal defendant has no absolute right to substitute appointed counsel. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 803, citing *Marsden*, *supra*, 2 Cal.3d at p. 123.) "When a defendant seeks substitution of appointed counsel . . . 'the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.'" (*People v. Taylor* (2010) 48 Cal.4th 574, 599 (*Taylor*).) To establish inadequate representation a defendant must show both that counsel's performance was deficient and that there is a reasonable probability the outcome of the proceeding would have been different absent the error. (*People v. Mai*, *supra*, 57 Cal.4th at p.

24

1009.) To establish an irreconcilable conflict, generally the defendant must point to actions by the attorney that led to a breakdown of the relationship. (See *People v. Smith* (2003) 30 Cal.4th 581, 606 [upholding denial of Marsden motion where "[d]efendant did not show that defense counsel did anything to cause any breakdown in their relationship"].) A defendant may not manufacture a conflict through his or her own conduct or "effectively veto an appointment of counsel by claiming a lack of trust in, or inability to get along with, the appointed attorney." (*Ibid.*) We review a trial court's denial of a *Marsden* motion for abuse of discretion. (*Taylor*, *supra*, 48 Cal.4th at 599.)

Appellant argues that his *Marsden* motions should have been granted because his counsel rendered ineffective assistance. He concedes that "several of [his] complaints of deficient performance were not relevant to the *Romero* motion, and neither the court nor counsel can be faulted for failing to pursue those claims." However, he maintains that his "claim that trial counsel was not investigating [his] background or locating and interviewing potential witnesses was a legitimate concern the court should not have ignored." Appellant contends his counsel "made merely a pretense" of assisting him with the *Romero* motion, and the court "shut him down" when he tried to explain counsel's investigatory shortcomings. Appellant contends counsel's failure to investigate prejudiced him, because "[c]ommon sense dictates that the absence of supporting evidence necessarily has an adverse impact on the credibility of the claims asserted in the written pleading." In support, he points to the court's comment about a lack of evidence corroborating his claims that he assisted law enforcement while incarcerated.

25

We find no ineffective assistance of counsel or abuse of the court's discretion. At the *Marsden* hearing, appellant told the court he had given counsel "several names of witnesses" to investigate. He then identified one of those witnesses by name and explained the witness could corroborate his claim that he tried to seek help for his substance abuse but his "parole officer wouldn't allow me to go into the program." Appellant told the court that counsel "contacted [the witness] and said he would like [the witness] to put [his testimony] in email format." The witness died before he was able to do so. The record thus reflects that counsel investigated at least one of the witnesses appellant deemed crucial to his motion. Appellant told the court that he gave counsel "probably the better part of 30 or 40 plus additional witnesses" to investigate, and his pro per *Romero* motion includes an exhibit that appears to identify many of these witnesses and highlight various aspects of appellant's difficult upbringing and substance abuse about which they could provide further information. However, "[d]efense counsel is not required to investigate all potential witnesses." (*People v. Vera* (2004) 122 Cal.App.4th 970, 979.) Counsel represented that he had reviewed the dozens of letters appellant sent him and "investigated what I needed to on the *Romero* motion," and he presented arguments both in orally and in writing that appellant suffered from childhood abuse and trauma, "was an addicted drug offender," and "tried to get help but was unable to do so." There is no indication that the court discredited the substance of these arguments due to the lack of witness testimony or other

corroborating evidence.[11] Instead, the court found appellant's drug abuse was "not a motivating factor" warranting the striking of his strike priors for "repeated" residential burglaries. The court's adverse discretionary ruling does not render counsel ineffective.

Appellant does not argue any other bases for finding prejudice here, such as identifying specific witnesses who could have provided mitigating evidence counsel did not argue or the court did not consider. He asserts that the court could have appointed new counsel and continued the matter because delay for further investigation would not prejudice either side, but that is not a pertinent consideration in assessing counsel's performance.

## III. Abstract of Judgment

The trial court did not issue a new abstract of judgment after it denied appellant's *Romero* and *Marsden* motions at the April 12, 2023 hearing. Appellant contends the trial court must issue a new abstract of judgment for two reasons. First, he asserts that the most recent abstract, prepared after the November 1, 2021 hearing, does not fully reflect the actual number of days he served between his initial date of incarceration and the date of his most recent resentencing, April 12, 2023. Second, he asserts that the most recent abstract does

---

[11] The record includes a letter documenting appellant's "vigorous attempt . . . to enroll" in a "long term alcohol recovery program" in September 1992, and appellant's parole officer's rejection of his entry because the officer "preferred his own random testing and all the difficulties involved in allowing Mr. Greenlee to report to [the officer] weekly." The letter corroborates appellant's claims that he suffered from and sought help for substance abuse.

not reflect the redesignation of his conviction for petty theft with a prior from a felony to a misdemeanor. Respondent agrees that the abstract should be modified to reflect the redesignation. We concur.

"An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 (*Mitchell*).) Here, the trial court orally redesignated appellant's conviction for petty theft with a prior to a misdemeanor on December 1, 2015, a change recognized in *Greenlee II*. (See *Greenlee II*, *supra*.) Appellant's overall sentence remained the same, because the sentence on that count had been imposed concurrently and stayed pursuant to section 654. Nevertheless, the abstract of judgment should accurately reflect the current status of appellant's convictions and sentence. (*Mitchell*, at pp. 185, 188 [courts may correct clerical errors at any time; appellate court may order trial court to make correction to abstract of judgment].)

The most recent abstract of judgment, prepared after the November 1, 2021 hearing, already reflects the custody credits appellant accrued to that point. And because the trial court did not make any changes to appellant's sentence on April 12, 2023, it was not required to recalculate those credits or issue a new abstract. (See *People v. Buckhalter* (2001) 26 Cal.4th 20, 29 [holding that a trial court must recalculate a defendant's custody credits when "a prison term already in progress is modified"].)

**DISPOSITION**

The abstract of judgment must be modified to reflect the previous redesignation of appellant's 2002 conviction for petty

theft with a prior from a felony to a misdemeanor.  The judgment is otherwise affirmed as modified.  The trial court is directed to prepare and forward an amended abstract of judgment to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


CURREY, P.J.


ZUKIN, J.